In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2520

Sarah E. Atwell,

Plaintiff-Appellant,

v.

Lisle Park District,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 7267--Charles P. Kocoras, Judge.

Argued January 8, 2002--Decided April 12, 2002


   Before Posner, Coffey, and Diane P. Wood,
Circuit Judges.

   Posner, Circuit Judge.  The defendant
park district, an Illinois public entity,
employed Sarah Atwell as its director of
development. About 15 months after hiring
her, the Park District retained a law
firm to investigate allegations of
"financial improprieties" and "misuse of
funds," including "unauthorized
expenditures of Park District funds and
the concealment of those expenditures." A
target of the investigation, Atwell was
suspended with pay, told that an
investigator would contact her, and
instructed to cooperate with the
investigation. She retained a lawyer.
Shortly afterward, the investigator, a
lawyer for the law firm investigating the
allegations, met with Atwell in a parking
lot to pick up some Park District
property that Atwell had in her
possession and in the course of this
encounter told her that a grand jury was
being convened to investigate the allega
tions and that, in light of the grand
jury's involvement, Atwell's lawyer would
probably advise her that it would be
prudent for her to exercise her
constitutional right to remain silent.
Sure enough, her lawyer advised her not
to agree to be interviewed by the law
firm that was conducting the
investigation. The Park District then

fired Atwell (after notice and an opportunity for a hearing) for insubordination in failing to cooperate in the investigation and for receipt of unauthorized salary payments. The suit charges that her termination violated her right not to be compelled to incriminate herself and that after firing her the Park District deprived her of property without due process of law by publicly releasing false information about her, including information that would prevent her from obtaining comparable employment. The district court dismissed the complaint for failure to state a claim.

The government is not allowed to force a person to make a statement, even out of court, that might be used as evidence that he had committed a crime. It is not even allowed to pressure him into cooperating by threatening to fire him (if he's a government employee) for his refusing to provide such evidence. Gardner v. Broderick, 392 U.S. 273, 276, 278-79 (1968); Chan v. Wodnicki, 123 F.3d 1005, 1009 (7th Cir. 1997); Lenard v. Argento, 699 F.2d 874, 896 (7th Cir. 1983). It has every right to investigate allegations of misconduct, including criminal misconduct by its employees, and even to force them to answer questions pertinent to the investigation, but if it does that it must give them immunity from criminal prosecution on the basis of their answers. Lefkowitz v. Cunningham, 431 U.S. 801, 806 (1977); Gardner v. Broderick, supra, 392 U.S. at 276; Chan v. Wodnicki, supra, 123 F.3d at 1009. Nor can the federal government use those answers to assist it in its own prosecution of the person. Murphy v. Waterfront Commission, 378 U.S. 52, 79-80 and n. 18 (1964); United States v. Balsys, 524 U.S. 666, 683 (1998).

For these purposes, moreover, the state is treated as a unit: if the Park District insisted on Atwell's giving evidence that might show she had committed a crime, the state's attorney could not use that evidence to prosecute her. Oddly, the cases do not bother to say this; but it is implicit in any case involving an employee of a department that does not do criminal prosecutions and it is his own department rather than the prosecutor that is interrogating him; and that of course is the standard case. See, e.g., Gulden v. McCorkle, 680 F.2d 1070, 1071

(5th Cir. 1982).

Our court has ruled in several cases that the government employer who wants to ask an employee potentially incriminating questions must first warn him that because of the immunity to which the cases entitle him, he may not refuse to answer the questions on the ground that the answers may incriminate him. Riggins v. Walter, 279 F.3d 422, 431 (7th Cir. 1995) (per curiam); United States v. Devitt, 499 F.2d 135, 141 (7th Cir. 1974); Confederation of Police v. Conlisk, 489 F.2d 891, 894 (7th Cir. 1973). This rule is unique. It has been rejected in two circuits, Hill v. Johnson, 160 F.3d 469, 471 (8th Cir. 1998); Gulden v. McCorkle, supra, 680 F.2d at 1076, has been expressly left open in two others, Wiley v. Mayor & City Council of Baltimore, 48 F.3d 773, 777 and n. 7 (4th Cir. 1995); Grand Jury Subpoenas Dated Dec. 7 & 8 v. United States, 40 F.3d 1096, 1102 n. 5 (10th Cir. 1994), and has been followed in none, though the Second Circuit hinted at it in a dictum in Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation, 426 F.2d 619, 626-27 (2d Cir. 1970) (Friendly, J.). Outside the criminal context, government is not required to advise the persons with whom it deals, including its employees, of their legal options. Our rule is perhaps best understood as an anti-mousetrapping rule. Uncounseled persons are much more likely to know about their "Fifth Amendment" right than they are to know about an immunity that qualifies the right. Asked to give answers to questions put to them in the course of an investigation of their arguably criminal conduct, they may instinctively "take the Fifth" and by doing so unknowingly set themselves up to be fired without recourse.

Whatever the merits of the rule, and whether, in light of its rationale, it has any possible application when the employee has a lawyer, we have already registered our agreement with the Fifth Circuit that there can be no duty to warn until the employee is asked specific questions. Riggins v. Walter, supra, 279 F.3d at 431; Gulden v. McCorkle, supra, 680 F.2d at 1076. The employee has no right to skip the interview merely because he has reason to think he'll be asked questions the answers to which

might be incriminating. He may be asked other questions as well. Or he may be told that he can take the Fifth without repercussions. Or that the interviewer will merely draw an adverse inference from the employee's taking the Fifth, which is permitted in civil cases. Baxter v. Palmigiano, 425 U.S. 308, 316-20 (1976). The statute authorizing grants of immunity to witnesses before Congress "does not authorize grants of immunity to persons who are not witnesses but may in the future become witnesses, may refuse to testify, and may claim their privilege. Nothing in the Act suggests that Congress meant to authorize grants of unlimited immunity to possible witnesses in exchange for undescribed evidence of undisclosed value in unidentified investigations." In re McElrath, 248 F.2d 612, 615 (D.C. Cir. 1957) (en banc) (plurality opinion); see also United States v. Di Mauro, 441 F.2d 428, 440 (8th Cir. 1971). Witnesses before congressional committees who plan to take the Fifth if asked certain questions that they expect to be asked cannot on that account refuse to show up at the committee hearing--in fact, they commit a misdemeanor if they refuse to show up. 2 U.S.C. sec. 192; Wheeldin v. United States, 283 F.2d 535 (9th Cir. 1960) (per curiam).

Atwell was not being asked to meet with the investigator in the absence of her lawyer. With her lawyer at her elbow to advise her, she would have known which questions she could refuse to answer (but for immunity) on self-incrimination grounds. If she refused to answer a question on such grounds, and if our rule applies even when the employee who is being questioned has a lawyer--even when the lawyer is present at the interrogation--that would be the time to warn her that if she refused to answer the question despite the immunity the Fifth Amendment would not protect her from being fired for refusing to cooperate in the investigation.

The wrinkle here is that the investigator (concededly an agent of the Park District for these purposes though employed by the law firm that the District had retained to investigate the allegations of financial improprieties) gave Atwell misleading advice--basically not to cooperate with the investigation.

It was in the form of a prediction, but was likely to be, and we may assume was, interpreted as legal advice. Had Atwell not had a lawyer, the Park District might conceivably (our tentativeness is deliberate) be estopped to deny that Atwell had a Fifth Amendment right not to cooperate with the investigation, though most cases refuse to base estoppel on a misrepresentation of law, reasoning that the plaintiff could have consulted a lawyer. E.g., Utah Power & Light Co. v. Federal Ins. Co., 983 F.2d 1549, 1556 (10th Cir. 1993) ("no one can be deceived by a misrepresentation of law because everyone has access to the law"); Quality Finance Co. v. Mitchell, 423 So. 2d 1262, 1266 (La. App. 1982). This "equal access" theory is unrealistic, though not as unrealistic as grounding a principle that misrepresentations of law are not actionable in the hoary maxim--a testament to the embarrassing tenacity of legal fictions--that everyone is presumed to know the law, United States v. Marine Shale Processors, 81 F.3d 1329, 1349 (5th Cir. 1996). We are reassured by Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 235 (1959), which rejects any blanket rule against basing estoppel on a misrepresentation of law; but we needn't pursue the issue further here.

It is doubtful that estoppel could ever bring a case in which there was no violation of the Constitution into federal court under 42 U.S.C. sec. 1983, the statute under which Atwell sued, which creates a remedy for violations of federal rights under color of state law. Atwell had no federal right, whatever the Park District may have told her. The Park District therefore could not have violated her federal rights. If it misled her into not cooperating with the investigation and then fired her for not cooperating, it might be guilty of fraud or breach of contract under state law, Board of Education v. A, C & S, Inc., 546 N.E.2d 580, 591 (Ill. 1989), but there would be no federal violation.

If she had had a contract under which she could be fired only for cause (which apparently she did not), she might have tried to estop the Park District to plead that her refusal to cooperate with its investigation was cause for firing her, though she would doubtless be met by the proposition of Illinois law that estoppel

will lie against public agencies only in extraordinary situations, Cities Service Oil Co. v. City of Des Plaines, 171 N.E.2d 605, 607 (Ill. 1961); Monat v. County of Cook, 750 N.E.2d 260, 270 (Ill. App. 2001), which we assume this was not, considering that it wasn't even an employee of the Park District who allegedly misled the plaintiff. These cases illustrate the traditional judicial reluctance to apply estoppel against the government. Office of Personnel Management v. Richmond, 496 U.S. 414, 419 (1990); Estate of Kunze v. Commissioner, 233 F.3d 948, 952 (7th Cir. 2000); Gibson v. West, 201 F.3d 990, 994 (7th Cir. 2000). In any event, whether estoppel would lie would be a matter of state law; it would have nothing to do with this suit, a suit under federal law.

Even if we brush all these problems to one side, we are left with the bedrock principle that a reasonable person represented by a lawyer does not rely on the legal advice given him by an adversary, which was the status of the investigator in relation to Atwell, as she well knew. A reasonable person in Atwell's position consults his or her own lawyer. Atwell did. The lawyer gave her bad advice. For that she may have a remedy against the lawyer, but she has no remedy against the Park District. Estoppel requires reasonable reliance on the misrepresentation of the party who is sought to be estopped. Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 59 (1984); Teamsters & Employers Welfare Trust v. Gorman Bros. Ready Mix, No. 01-2029, 2002 WL 417405, at *5 (7th Cir. Mar. 19, 2002); Rager v. Dade Behring, Inc., 210 F.3d 776, 779 (7th Cir. 2000); Frahm v. Equitable Life Assurance Society, 137 F.3d 955, 961 (7th Cir. 1998); Elmore v. Cone Mills Corp., 187 F.3d 442, 447 (4th Cir. 1999) (per curiam). Reliance on a known adversary's legal advice is not reasonable, especially when one has ready access to a lawyer of one's own. See In re VMS Ltd. Partnership Securities Litigation, 26 F.3d 50, 52 (7th Cir. 1994); In re Larson, 862 F.2d 112, 115 (7th Cir. 1988); Office & Professional Employees Int'l Union, Local No. 471 v. Brownsville General Hospital, 186 F.3d 326, 336 (3d Cir. 1999); Vadino v. A. Valey Engineers, 903 F.2d 253, 263-64 (3d Cir. 1990); Elk Park Ranch, Inc. v. Park

County, 935 P.2d 1131, 1138 (Mont. 1997).

Atwell's other claim is unrelated to the Fifth Amendment's self-incrimination clause. It invokes the principle that while reputation is not liberty or property within the meaning of the due process clauses, and so defamation, a tortious injury to reputation, is not a constitutional tort, e.g., Siegert v. Gilley, 500 U.S. 226, 233 (1991); Paul v. Davis, 424 U.S. 693, 711-12 (1976); Klug v. Chicago School Reform Bd. of Trustees, 197 F.3d 853, 859 (7th Cir. 1999), occupational liberty is a form of liberty under those clauses; and so the dissemination of false information that renders a person unemployable is a constitutional tort. Hedrich v. Board of Regents, 274 F.3d 1174, 1183-84 (7th Cir. 2001); Bone v. City of Lafayette, 763 F.2d 295, 297-98 (7th Cir. 1985); Lawson v. Sheriff of Tippecanoe County, 725 F.2d 1136, 1138-39 (7th Cir. 1984). Atwell alleges dissemination of false information about financial improprieties and receipt of unauthorized salary but not that the dissemination of either form of false information deprived her of her occupational liberty. The false information the dissemination of which she alleges deprived her of that liberty is "other" information (her word) not specified in the complaint or in any other document filed by the plaintiff or found in the record.

Ordinarily a plaintiff is not required to plead specifics. Swierkiewicz v. Sorema N. A., 122 S.Ct. 992, 995 (2002); Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993); Beanstalk Group, Inc. v. AM General Corp., No. 01-2164, 2002 WL 406985, at *6 (7th Cir. Mar. 15, 2002); Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999). Ordinarily therefore it would be enough in a case of this sort for the plaintiff to allege that the defendant had disseminated false information with the consequence of depriving her of liberty of contract. See Codd v. Velger, 429 U.S. 624, 627-28 (1977) (per curiam); Austin v. Board of Education, 562 F.2d 446, 449 (7th Cir. 1977); Whitney v. New Mexico, 113 F.3d 1170, 1175 (10th Cir. 1997); Lentsch v. Marshall, 741 F.2d 301, 305 (10th Cir. 1984); Little v. City of North Miami, 805 F.2d 962, 969 (11th Cir. 1986)

(per curiam). This case is unusual, however, because so far as appears from the complaint, the only information disseminated by the Park District, whether true or false, was information concerning the alleged conduct of Atwell that resulted in her termination after notice and an opportunity for her to be heard. Whether the dissemination of such information has rendered Atwell unemployable is irrelevant. The due process clause does not forbid deprivations of liberty as such, but only those deprivations that are effectuated without due process of law. If the state provides notice of and an opportunity to be heard concerning allegations that if publicized will render a person unemployable, the person has no ground for a federal claim should the allegations, having been sustained without due process being denied, later be publicized as the grounds for the person's having been fired. See Garcia v. Kankakee County Housing Authority, 279 F.3d 532, 535 (7th Cir. 2002). Should the state later issue embroidered allegations, allegations that exceed the scope of the hearing and as to which therefore the employee had no notice and opportunity to be heard, that would be a different case. But when pressed, Atwell's lawyer was unable to indicate any such embroidery, and we infer that he does not understand the elements required to make out a "defamation plus" claim--in other words that he is really just alleging defamation.

Affirmed.