# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-2127

EDWARD FRANKLIN,

*Plaintiff-Appellant,*

v.

CITY OF EVANSTON,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 8252—**Joan Humphrey Lefkow**, Judge.

_____

ARGUED FEBRUARY 19, 2004—DECIDED SEPTEMBER 27, 2004

_____

Before CUDAHY, POSNER and ROVNER, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Edward Franklin, an employee of the City of Evanston (the City), was arrested for possession of a small amount of marijuana. Learning of Franklin's arrest in the local paper, the City instituted disciplinary proceedings against him while his criminal case was pending. Franklin unsuccessfully requested that the disciplinary proceedings be continued for a few months until his criminal case was resolved. The City pressed ahead with its disciplinary hearings, questioning Franklin about the criminal charge without warning him, as we have long held to be required by due process considerations, that he would be

granted immunity from prosecution based on his answers and that a failure to answer would therefore be viewed negatively. At oral argument, the City admitted that its failure to provide Franklin with the required warnings was pursuant to its policy based on an extremely narrow interpretation of our case law, under which warnings would be required only if the City explicitly required an employee to answer questions on pain of losing his or her employment. However, because the City's admitted policy effectively does not allow employees in Franklin's situation an opportunity to tell their side of the story without penalty, we find that the City violated Franklin's right to procedural due process under 42 U.S.C. § 1983. For the reasons set out in this opinion, the district court's grant of summary judgment to the City on this issue is therefore reversed.

## I.

From 1975 until December 17, 1997, Franklin, an African-American, worked for the Division of Streets and Sanitation of the Public Works Department of the City of Evanston. At the time of his termination, Franklin was employed by the City as a Driver/Loader. On November 7, 1997, while off-duty, Franklin was arrested by Evanston police and charged with possession of a small amount of cannabis (marijuana), a misdemeanor offense. The EVANSTON REVIEW, a local paper, published his arrest in its "The Police Blotter" section, where it came to the attention of one of Franklin's coworkers. The coworker showed the article to Franklin's immediate supervisor, Zeltee Edwards, the Superintendent of the Division of Streets and Sanitation. Edwards confirmed with the Evanston Police Department that Franklin had been arrested.

On November 13, 1997, Edwards brought Franklin into a brief meeting to discuss the charges. When asked to respond to the allegations, Franklin refused, stating that he

could not say anything because he was facing a criminal charge. Franklin indicated that the information in the police report and the newspaper was all he knew. (R. 34, ex. 7.) The City suspended Franklin without pay, pending an investigation.

On November 26, 1997, a "due cause" meeting was held to determine the maximum level of discipline Franklin could receive. Franklin was not present at this meeting. Judith Witt, the Director of Human Resources for the City, was on the committee that authorized Franklin's termination, though the final decision as to what level of discipline to impose was left up to Edwards. The authorization to terminate Franklin was based on Franklin's alleged violation of the 1989 Work Rules imposed by the 1995 Collective Bargaining Agreement (CBA) between the City and the union of which Franklin was a member.[1]

Under the Evanston City Code, after a due cause meeting, an employee is entitled to a pre-disciplinary meeting, to which he may be accompanied by a union representative. On December 12, 1997, the City held such a meeting with Franklin and his union representative. Franklin was again asked at this meeting to respond to the criminal charge pending against him. He neither admitted nor denied possessing the marijuana because he did not want to jeopardize his criminal defense. Instead, he requested postponement of the meeting until after his criminal case—which had been continued to February 5, 1998—was resolved. The City denied his request, and Edwards decided that Franklin should be terminated. On December 17, 1997, Franklin's employment with the City was terminated for violating the

---

[1] The Work Rules had been substantially revised in 1991, and the parties dispute which version was in effect at the time of Franklin's dismissal. However, the resolution of this dispute is unnecessary to the outcome of this case.

1989 version of Work Rule 23.1(e), which prohibited the possession of illegal drugs.

Franklin was the first City employee to be discharged for a violation of Rule 23.1(e). (R.34, ex. 9.) He points to a Caucasian employee, Timothy Hartigan, who had been arrested for driving under the influence (DUI) in 1996 but was not discharged. However, the City notes that three African-American employees were also subsequently arrested for DUI and were not discharged.

Franklin's union filed an official grievance on his behalf and presented it to the City on December 31, 1997. (R. 34, ex. 13.) At a January 26, 1998 hearing, the union argued that the City should have waited until after Franklin's criminal charges had been resolved before disciplining him. Franklin's grievance was denied based on the City's determination that his refusal to respond to the criminal charges and his alleged admission to police that he had possessed the marijuana validated the termination.[2] On February 5, 1998, Franklin's criminal case was *nolle prossed*, and the criminal charge against him was dismissed.

Franklin filed suit against the City, seeking damages for the violation of his rights under 42 U.S.C. § 1983 and § 1981. Both parties subsequently filed cross motions for summary judgment. On November 20, 2002, the district court, relying on our decision in *Atwell v. Lisle Park Dist.*,

---

[2] Franklin denies having admitted to police that he possessed the marijuana found when he was arrested. Since this is a review of the district court's grant of summary judgment to the City, we must take the facts in the light most favorable to the non-moving party and must resolve disputed facts in Franklin's favor. However, the fact that the City *believed* Franklin had admitted to possessing the marijuana and terminated him (in part) on this basis is not inconsistent with Franklin's denial of having made such an admission.

286 F.3d 987 (7th Cir. 2002), granted summary judgment to Franklin on his § 1983 claim for violation of his right to procedural due process. The district court found that the City had failed to give Franklin a meaningful opportunity to respond in the disciplinary proceedings since criminal charges were pending and Franklin was compelled to respond (by the fear of losing his job) without any guarantee of immunity. (11/20/02 Order.) Although the district court determined that the City had no express policy of requiring an employee to forego his Fifth Amendment rights on pain of losing his job, it found that Witt was a final policymaker who had the authority to set policy for Evanston on issues regarding drug and alcohol use and terminations and who ratified the decision to terminate Franklin, concluding that the City was therefore liable under § 1983. However, the district court granted the City's motion for summary judgment on the other two aspects of Franklin's § 1983 claim, which were based on deprivation of liberty arising from a state statute and on deprivation of equal protection due to the alleged disparate impact of using arrest records in terminating employees. The district court also granted the City's motion for summary judgment as to Franklin's § 1981 disparate treatment and disparate impact claims.

The City subsequently filed a motion to reconsider, arguing that *Atwell* should not apply retroactively and that Witt was not a final policymaker, so the City should not be held liable even if Franklin's rights were violated. (Mot. to Reconsider, R. 47.) On March 31, 2003, the district court reversed its grant of summary judgment to Franklin on his § 1983 procedural due process claim and instead granted summary judgment to the City, accepting the City's "long overdue" fleshing out of its argument that Witt was not a final policymaker. (3/31/03 Order). Franklin now appeals the district court's grant of the City's motion to reconsider as well as the district court's grant of summary judgment against him on all of his § 1983 and § 1981 claims.

## II.

We review the district court's grant of summary judgment de novo. *Dykema v. Skoumal*, 261 F.3d 701, 704 (7th Cir. 2001). This standard applies when cross motions for summary judgment are filed. *Metro. Life Ins. Co. v. Smith*, 297 F.3d 558, 561 (7th Cir. 2002). To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, "we draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Williamson v. Ind. Univ.*, 345 F.3d 459, 462 (7th Cir. 2003).

### A.

A municipality is liable under § 1983 when a deprivation of constitutional rights is caused by a municipal policy or custom. *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). Such liability may be demonstrated in three ways: (1) by an express policy that, when enforced, causes a constitutional deprivation; (2) by a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) by a showing that the constitutional injury was caused by a person with final policymaking authority. *Baskin v. City of Des Plaines*, 138 F.3d 701, 704-05 (7th Cir. 1998).

Franklin argued to the district court that the City violated § 1983 for four reasons: (1) it denied him procedural due process; (2) it violated his liberty interest in his reputation; (3) it violated a liberty interest arising from Illinois state law; and (4) it denied him equal protection of the laws because Evanston's policy of using arrest records in discharging employees is inherently racially discriminatory.

The district court initially granted summary judgment to Franklin on the first aspect of his § 1983 claim but granted summary judgment to the City on the latter three. Upon reconsideration, the district court reversed itself and granted summary judgment to the City on the first aspect of Franklin's § 1983 claim as well, because the court found that Witt, to whom the injury had been ascribed, did not in fact have final policymaking authority.

**1.**

In keeping with our decision in *Atwell*, the district court found that the City was required either to warn Franklin that he had immunity for any statements made during the disciplinary hearing (in which case he would be required to answer questions), or to continue Franklin's suspension without pay until Franklin's criminal case had been resolved. Although the district court noted that there appeared not to be an official policy with respect to the need for *Atwell* warnings, it declined to infer that there was an express policy to *disregard* the right to *Atwell* warnings. The district court (at least initially) imputed § 1983 liability to the City on the basis that Witt was a final policymaker with the authority to draft rules governing firing decisions and the procedures to be used in firing employees. However, upon reconsideration, the district court reversed itself on the issue of Witt's status as a final policymaker.

The relevant policy here is the City's policy, or lack thereof, with respect to providing *Atwell* warnings to employees threatened with discharge. At oral argument on appeal, counsel for the City admitted the existence of a City policy that we find to be in violation of *Atwell*. Specifically, the City conceded that it had interpreted the line of cases leading up to *Atwell* in an exceedingly narrow manner, determining that *Atwell* warnings did not need to be provided unless the employee was literally told "to speak or face the

loss of his job for exercising his right not to speak." (City's Br. at 15.) The City also admitted that it had consulted an attorney with respect to the circumstances in which *Atwell* warnings are required and that Franklin was, based on advice of counsel, not provided with any such warnings. In addition, the City argued that such warnings were unnecessary because *Atwell* was decided after Franklin's disciplinary hearing and termination. (*See also* Letter to the Court from counsel for the City of Evanston, February 23, 2004.)

We believe that the district court correctly found *Atwell* applicable here, because Franklin was in precisely the position addressed by *Atwell*. Pursuant to an express policy as stated by its appellate counsel, the City refused to continue Franklin's disciplinary hearing until after his criminal case was resolved, and the City asked Franklin to respond at the hearing to the criminal charges against him without advising him that his responses could not be used against him in his pending criminal proceedings. Franklin was thus effectively forced to choose between his job and his Fifth Amendment rights, and this was an impermissible violation of his Fourteenth Amendment right to procedural due process.[3]

The City's argument that *Atwell* warnings were not required because *Atwell* was decided after Franklin's disciplinary hearing gets it nowhere fast. "[A]s a general proposition, a federal court applies the law in effect at the time it renders its decision." *Chowaniec v. Arlington Park Race Track, Ltd.*, 934 F.2d 128, 131 (7th Cir. 1991); *see also EEOC v. Vucitech*, 842 F.2d 936, 941 (7th Cir., 1988) ("Judicial

---

[3] The district court found, and we agree, that Franklin had a protectible property interest in his job because he was a government employee whose employment could be terminated only "for cause." (11/19/02 Order at **8** (citing, *inter alia*, *Cleveland v. Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir. 2002)).)

decisions normally are retroactive; that is, they apply to conduct that occurred before the decision was rendered."). Thus, the fact that *Atwell* was decided in 2002 and Franklin's termination took place in 1997 is not determinative. We find that the district court erroneously granted summary judgment to the City upon its reconsideration of Franklin's procedural due process claim under § 1983 based on its determination that Witt was not a final policymaker and on its earlier finding that the City did not have an express policy to omit *Atwell* warnings. Now, however, the City, through counsel, has admitted its express policy of not providing *Atwell* warnings to employees such as Franklin.[4]

### 2.

Franklin next argues that he had a protectible liberty interest in his reputation, which was violated when the City allegedly publicized the reasons for his termination and included that information in his personnel file. However, the district court found that "[t]he undisputed facts show that the only disclosure of the information came through its release in the EVANSTON REVIEW, and that Franklin was able to obtain subsequent employment after being terminated." (11/19/02 Order at 8 n.5.) Thus, the district court found that Franklin had failed to "create an issue of fact as to either the public disclosure of the alleged stigmatizing information or the tangible loss of other employment oppor-

---

[4] Because we find that the district court erroneously granted summary judgment to the City on Franklin's § 1983 claim for denial of procedural due process, we decline to address whether it erred in granting the City's motion to reconsider this issue. Additionally, because we find that the City had an express policy of failing to provide *Atwell* warnings in situations where they were required, we decline to address whether Witt and/or Edwards were policymakers with final policymaking authority.

tunities." (*Id.*) Franklin points to no evidence that the City publicly disseminated the reason for his termination, and the fact that his coworkers discussed Franklin's arrest and his subsequent termination does not fill the gap. Since Franklin fails to show that the City "disseminated the stigmatizing information in a manner which would reach future potential employers of the plaintiff or the community at large, [he] cannot show that the defendant['s] actions impinged on [his] liberty interest in pursuing [his] occupation." *Ratliff v. City of Milwaukee*, 795 F.2d 612, 627 (7th Cir. 1986). The inclusion of information in his personnel file regarding his arrest is similarly insufficient to make out a claim. *See Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir. 1991) ("The plain fact is that the mere existence of damaging information in Johnson's personnel file cannot give rise to a due process challenge."); *Clark v. Maurer*, 824 F.2d 565, 567 (7th Cir. 1987).

**3.**

Franklin's third claimed violation of § 1983 was predicated on the deprivation of a liberty interest protected by the Illinois Human Rights Act, 775 I.L.C.S. 5/2-103, which Franklin interprets as prohibiting an employer from inquiring into or using the fact of an arrest as a basis to discharge an employee.[5] Although state statutes may create

_____

[5] The Illinois Human Rights Act states that "it is a civil rights violation for any employer . . . to inquire into or to use the fact of an arrest or criminal history record information *ordered expunged, sealed or impounded* . . . as a basis . . . to act with respect to . . . discharge [or] discipline . . . ." 775 I.L.C.S. 5/2-103(A). This language is unclear whether the requirement of having been expunged, sealed or impounded applies to arrests or only to criminal history record information, and the courts of Illinois have never had

(continued...)

liberty interests that can implicate the Fourteenth Amendment if a person is deprived of them without due process, *White v. Olig*, 56 F.3d 817, 821 (7th Cir. 1995), Franklin provides insufficient support for his argument why this particular state statute creates such a liberty interest. Franklin asserts that the procedural guarantees of the Illinois Human Rights Act are "no less compelling" than those of prisoner cases, and that wrongful deprivation of employment is a "similarly severe" violation of due process as the risk of convicting an innocent person. (Franklin's Reply Br. at 18, 19.) However, we fail to see how Franklin's claimed violation of Illinois's prohibition against using an arrest as a basis for discharging employees could amount to a due process violation implicating a liberty interest protected by the federal constitution.

Moreover, Franklin did not show that the City had actually violated the Illinois Human Rights Act by relying on his arrest as a basis for his discharge. The district court found that "the evidence is undisputed that it was not because Franklin had an arrest or an arrest record that he was fired." (11/19/02 Order at 15.) Rather, the district court found that Franklin's discharge was based on the City's determination that Franklin had violated a City work rule

---

5  (...continued)

occasion to decide this particular issue. We note that an advocacy group has interpreted this provision of the Illinois Human Rights Act to be inapplicable to arrest records that were not expunged, sealed or impounded. National H.I.R.E. Network Legal Action Center, "Policy Recommendations to Support the Successful Re-entry of Former Offenders Through Employment," available at http://www.hirenetwork.org/pdfs/Illinois%20Policy%20Recommendations.pdf (last visited August 31, 2004). For the purposes of this appeal, however, and lacking any indication from the Illinois courts to the contrary, we will adopt Franklin's interpretation of the statute, because both the City and the district court accepted it without challenge.

prohibiting possession of controlled substances. Franklin does not provide us with any basis for finding that this factual determination is incorrect, and we will not disturb it. Thus, the district court correctly granted summary judgment to the City on this aspect of Franklin's § 1983 claim.

**4.**

Franklin's fourth claimed violation of § 1983 is an equal protection claim under the Fourteenth Amendment. Franklin argues that the City's use of arrest records in terminating employees has a disparate impact on African-Americans because a higher percentage of them have arrest records. However, Franklin presents no evidence that the City has a policy of using arrest records in disciplining employees, and we have already affirmed the district court's finding that Franklin's own termination was not based on his arrest. Moreover, to make out a prima facie case for an equal protection violation, Franklin may not rely on a disparate impact claim but must show that the City acted with discriminatory intent. *Anderson v. Cornejo*, 355 F.3d 1021, 1024 (7th Cir. 2004); *McPhaul v. Bd. of Comm'rs of Madison County*, 226 F.3d 558, 564 (7th Cir. 2000); *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). The district court found that Franklin made no such showing, and Franklin again provides no reason for us to disturb this finding on appeal. Thus, the district court correctly granted summary judgment to the City on this fourth aspect of Franklin's § 1983 claim.

**B.**

Franklin also claims that the City discriminated against him on the basis of his race in violation of 42 U.S.C. § 1981. He advances both disparate treatment and disparate impact theories. Finding that Franklin had failed to show that

there were similarly situated Caucasian employees who were not discharged, the district court granted summary judgment to the City on Franklin's disparate treatment claim. As for Franklin's disparate impact claim, the district court found that § 1981 requires intentional discrimination, and a § 1981 claim is not sufficiently supported by proof of a disparate impact. The district court therefore granted summary judgment to the City on Franklin's disparate impact claim.

**1.**

In order to make out a disparate treatment claim, Franklin must show that (1) he was a member of a protected class; (2) he was performing according to Evanston's expectations; (3) he suffered an adverse employment action; and (4) similarly situated Caucasian individuals were treated more favorably. *Bratton v. Roadway Package Sys. Inc.*, 77 F.3d 168, 176 (7th Cir. 1996). The district court found that Franklin had established the first three factors, but that he had failed to establish that there was a similarly situated Caucasian employee who had been treated more favorably. (11/19/02 Order at 17-18.)

To show that he is situated similarly to a Caucasian employee, Franklin must show that he is "similarly situated with respect to performance, qualifications and conduct." *Snipes v. Illinois Dept. of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002). This similarly situated employee must be "directly comparable . . . in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). Factors courts consider in determining whether two employees are similarly situated include whether the employees shared the same supervisor, whether they were subject to the same standards and whether they "had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's

treatment of them." *Snipes*, 291 F.3d at 463 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)).

On appeal, Franklin asserts that Timothy Hartigan, a Caucasian employee who had been arrested for DUI in 1996 but was not discharged, was a similarly situated employee. Both DUI and the possession of a small amount of marijuana are misdemeanor offenses under Illinois law. 720 I.L.C.S. 550/4 (criminalizing possession of more than 10 grams but not more than 30 grams of any substance containing cannabis as a Class A misdemeanor); 625 I.L.C.S. 5/11-501 (criminalizing DUI as, at minimum, a Class A misdemeanor, depending on the other facts and circumstances involved). However, the fact that the City did not discharge three African-American employees who had also been arrested for DUI—Walter Parham, Edgar Walker and William McPherson—indicates that, rightly or wrongly, the City simply treats DUI less harshly than the possession of marijuana. This does not amount to unlawful discrimination. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (finding that a pretext for discrimination "means something worse than a business error") (quoting *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001)). Moreover, as the City points out, Hartigan and Franklin had different supervisors, and, according to the City's disciplinary procedures, the employee's supervisor decides on the level of discipline. These are sufficient reasons to support a finding that Hartigan and Franklin were not similarly situated. Thus, the district court correctly granted summary judgment to the City on Franklin's disparate treatment claim under § 1981.

**2.**

Franklin also argues that the City terminated him because he was arrested for possession of marijuana, and that the

use of arrests in employment decisions has a disparate impact on African-Americans in violation of § 1981. But even assuming *arguendo* that Franklin was terminated pursuant to an "arrest *verboten*" policy of the City rather than because the City determined that he had violated a work rule that prohibited the possession of illegal drugs, Franklin still fails to make out a claim. Franklin argues that, since equal protection claims and § 1981 claims are analyzed using the same framework, the district court erred in granting summary judgment to the City on his disparate impact claim under § 1981. However, as previously noted, equal protection claims, like § 1981 claims, require a showing of discriminatory treatment and cannot be supported by proof of disparate impact. Thus, Franklin fails as a matter of law to make out a prima facie case for a violation of § 1981 based on a claim of disparate impact. *See Gen. Bldg. Contractors Ass'n v. United Eng'rs*, 458 U.S. 375, 391 (1982) ("[Section] 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination."); *Majeske v. Fraternal Order of Police, Lodge No. 7*, 94 F.3d 307, 312 (7th Cir. 1996) (noting that § 1981 is designed to forbid disparate treatment, not disparate impact). The district court therefore correctly granted summary judgment to the City on Franklin's § 1981 disparate impact claim.

## III.

On this appeal of the district court's eventual grant of summary judgment to the City of Evanston on all of Edward Franklin's claims, we are not concerned with whether the City may have erroneously determined that Franklin had violated its policy against possessing illegal drugs or, to that end, whether Franklin may have been vindicated by a *nolle prosequi* ending to his criminal case. Our concern is that in determining that Franklin had violated a City policy, the City did not provide him with a meaningful op-

portunity, as required by *Atwell*, to present his side of the story without fear of impairing his criminal defense. This was a violation of Franklin's right to procedural due process. Because it occurred pursuant to an express City policy that skirted the need for *Atwell* warnings, the City is liable for a violation of § 1983.

For the reasons set out above, we REVERSE the district court's grant of summary judgment to the City of Evanston on Franklin's § 1983 procedural due process claim, and we AFFIRM the district court's grant of summary judgment to the City on Franklin's other claims. We REMAND this case to the district court for further proceedings in accordance with this opinion.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*