# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-2750

BLACK AGENTS & BROKERS AGENCY, INC.,
MILTON WARD, MELVIN WARD, in their
capacity as shareholders and officers of
Black Agents & Brokers Agency, Inc., et al.,

*Plaintiffs-Appellants*,

v.

NEAR NORTH INSURANCE BROKERAGE, INC.,
MAJESTIC STAR CASINO, LLC, TRUMP
INDIANA, INC., et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for
the Northern District of Indiana, Hammond Division.
No. 01 C 419—**Philip P. Simon**, *Judge.*

_____

ARGUED APRIL 8, 2005—DECIDED MAY 27, 2005

_____

Before FLAUM, *Chief Judge*, and BAUER and WOOD,
*Circuit Judges*.

BAUER, *Circuit Judge.* Plaintiffs-Appellants Black Agents
& Brokers Agency, Inc. ("BABA") and its shareholders
brought claims of breach of contract, fraud, and discrimina-
tion on the basis of race in violation of 42 U.S.C. § 1981

against defendant-appellee Near North Insurance Brokerage, Inc. ("Near North") and defendants-appellees Trump Indiana, Inc., Majestic Star Casino, LLC, and Buffington Harbor Casinos, LLC ("the Riverboats").[1] The district court granted motions by Near North and the Riverboats for summary judgment, and BABA appealed. We affirm.

## I.  Background

In 1995, Near North sought to write insurance for the Riverboats, which operate casinos on Lake Michigan in Gary, Indiana. Under Indiana law, the Riverboats have an affirmative duty to grant a percentage of their contracts to minority-owned businesses. *See* IND. CODE §§ 4-33-14-1 *et seq.* Near North recognized that it stood a better chance of winning the Riverboats' business if it had a relationship with a minority-owned company. With this in mind, Near North approached BABA, a state-certified minority-owned business, to explore a co-brokerage arrangement. In 1996, Near North and BABA negotiated and finalized the Consulting Agreement that is at issue here. Pursuant to this Agreement, BABA was to serve as an "independent contractor" to Near North, and Near North would pay BABA $45,000 annually for services that included public relations work, information gathering, and scheduling meetings. The term of the Consulting Agreement was for one year, starting July 15, 1996, renewable for additional yearly periods or modifiable "only upon the signed, written agreement of both

---

[1] The district court granted summary judgment on the defendants' motion that BABA's individual shareholders who are named in the complaint are without standing to redress a breach of contract or an illegal act of discrimination done to a corporation. *See, e.g., Carney v. Gen. Motors Corp.,* 23 F.3d 1154, 1157 (7th Cir. 1994). Since appellants failed to address this matter on appeal, this issue has been waived.

parties." The Consulting Agreement also stated that each party had the right to cancel upon giving sixty days' notice.

After Near North and BABA finalized the Consulting Agreement, both parties made a joint presentation to the Riverboats. Afterwards, the Riverboats negotiated with Near North exclusively and, in 1996, decided to enter into a contract to purchase insurance from Near North. Pursuant to this insurance contract between the Riverboats and Near North, Near North would submit to the Riverboats invoices for the insurance premiums in BABA's name. Upon receiving the invoice, the Riverboats would write a check payable to BABA in full payment of the premium, which BABA would endorse to Near North and return to the Riverboats. The Riverboats would then mail the endorsed check in full payment of the insurance premium to Near North. Near North would then cut a separate check to BABA in the amount of $45,000 as payment for BABA's services, pursuant to their Consulting Agreement.

This consulting arrangement between Near North and BABA continued beyond the one-year term of the Agreement, but not without modifications. In 1998, Near North unilaterally reduced the flat annual fee it paid to BABA to $40,000, and in 1999 Near North began paying BABA quarterly, as opposed to annually. During this time, Near North—not the Riverboats—paid all of BABA's fees. After the initial joint presentation to the Riverboats in 1996, BABA's sole interaction with the Riverboats involved endorsing insurance premium checks over to Near North.

In 2000, one of BABA's principals defected, and a dispute arose when he tried to take with him some of BABA's business, including the Near North account. Confusion ensued, and Near North stopped its quarterly payments to BABA. BABA responded by suing both Near North and the Riverboats (which continued to make their premium payments to Near North), alleging breach of contract, fraud,

and discrimination on the basis of race in violation of 42 U.S.C. § 1981. At trial, the district court granted motions by Near North and the Riverboats for summary judgment and for partial judgment on the pleadings. In an opinion issued on June 7, 2004, the district court ruled that BABA's breach of contract claim against the Riverboats failed as a matter of law because the two parties were not bound by an enforceable agreement; BABA's breach of contract claim against Near North failed because their modified Consulting Agreement was terminable at will. BABA's § 1981 claim against both defendants failed as matter of law for lack of evidence of intent on the parts of Near North or the Riverboats to discriminate on the basis of race. As for the fraud claims, the district court found that BABA had abandoned its claim against Near North, and that it lacked standing to bring a claim of fraud against the Riverboats. BABA appealed the district court's rulings on its breach of contract and § 1981 claims.

Meanwhile, Near North became involved in a separate court proceeding, and on August 31, 2004, the district judge issued a stay of all claims and proceedings against Near North. Pursuant to this order, Near North filed a motion with this court on November 24, 2004, seeking a stay of all proceedings against Near North relating to this appeal. We granted the stay with respect to Near North only on January 7, 2005.

## II.  Discussion

A district court's grant of summary judgment is reviewed *de novo. Franklin v. City of Evanston*, 384 F.3d 838, 843 (7th Cir. 2004) (citing *Dykema v. Skoumal*, 261 F.3d 701, 704 (7th Cir. 2001)). "To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This court must draw every reasonable inference from the record in the light most favorable to the non-moving party. *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 497 (7th Cir. 1999). The production of only a scintilla of evidence, however, is insufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). In light of this court's order staying all claims and proceedings against Near North, we will confine our analysis as much as possible to BABA's arguments as they pertain to the Riverboats.

## A. BABA's Breach of Contract Claim

The district court ruled that BABA had produced no genuine issue of material fact that it had an enforceable agreement with the Riverboats. BABA challenges that ruling here, arguing that an agreement can be inferred from the three parties' conduct. Specifically, BABA contends that a reasonable jury could have found that an agreement existed by virtue of the Riverboats having been aware of the Consulting Agreement between Near North and BABA when it signed an agreement to buy insurance from Near North, and the Riverboats having written its insurance premium checks payable to BABA.

Under Indiana law a contract may be established by conduct, but only if it can be inferred that the parties mutually intended to be bound by the agreement. *See Indianapolis v. Twin Lakes Enterprises, Inc.*, 568 N.E.2d 1073, 1079 (Ind.Ct.App. 1991). The district court was correct that the record contains no evidence that the Riverboats intended to be bound to an agreement with BABA. The Riverboats bought insurance from Near North. The Riverboats ultimately sent all of their checks in payment of insurance premium fees to Near North; BABA admits that it was not entitled to these fees. Rather, to the extent that BABA had an enforceable agreement, it was with Near North, which

paid BABA a commission pursuant to their Consulting Agreement. Tellingly, when BABA stopped receiving its commission fees, it complained not to the Riverboats, but to Near North. The evidence in no way inferred the creation of an enforceable agreement with the Riverboats. It was not error for the district court to conclude that there was no contract to breach.

## B. BABA's § 1981 Claim

BABA argues that the Riverboats and Near North discriminated against it by limiting the scope of BABA's brokerage responsibilities in the terms of the Consulting Agreement, and by reducing BABA's commissions and modifying its payment schedule, all because of race. The district court granted summary judgment for the Riverboats and Near North. BABA challenges that ruling, arguing that the district court failed to explore whether the formation of the Consulting Agreement evidenced discriminatory intent and erred in deciding that the termination of the Consulting Agreement was not motivated by race. Specific to the Riverboats, BABA alleges that inferences of an intent to discriminate on account of race could be drawn from the Riverboats' role in encouraging Near North to partner with BABA, so that the Riverboats could report their compliance with Indiana's minority-owned business law.

Section 1981 prohibits discrimination in the making and enforcement of private contracts. *Sanghvi v. St. Catherine's Hospital, Inc.*, 258 F.3d 570, 573 (7th Cir. 2001). To state a claim under § 1981, BABA must allege facts in support of the following propositions: (1) BABA is a member of a racial minority; (2) the Riverboats intended to discriminate on the basis of race; and (3) the discrimination deprived BABA of one or more rights enumerated in § 1981, such as the making and enforcing of a contract. *Morris v. Office Max,*

*Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). BABA unquestionably satisfies the first prong of the test. We are unconvinced, however, that discriminatory intent has been shown under the second prong.

To begin with, it is difficult to understand how the Riverboats could have intended to discriminate against BABA in the making and termination of a contract when the two were never parties to a binding agreement, nor were they trying to enter into an agreement. BABA was only party to the Consulting Agreement, and that was with Near North, not the Riverboats. Moreover, BABA asks us to endorse a position that would subject to potential liability all employers who seek to comply with Indiana's law. That would be a perverse result, and we decline to endorse that approach. Therefore, we find that the district court did not impermissibly limit the scope of its inquiry, as no reasonable inference of an intent on the part of the Riverboats to discriminate on the basis of race can be gleaned from the record.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment as it pertains to BABA's claims against the Riverboats. Pursuant to this court's order dated January 7, 2005, granting a stay of proceedings against Near North, we do not rule on BABA's appeal insofar as it relates to Near North.

A true Copy:

      Teste:

                            _____
                            *Clerk of the United States Court of Appeals for the Seventh Circuit*