STAHL, Senior Circuit Judge,
dissenting.
I write briefly in dissent because I believe that Sher had an objectively reasonable concern that his statements could be used against him in a subsequent prosecution, based on the inaccurate letter he received from the U.S. Attorney’s Office. Therefore, I would hold that the failure to cooperate charge impinges on Sher’s Fifth Amendment right against self-incrimination and his rights under Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).
In my view, Garrity and its progeny address two separate questions. The first (“the immunity question”) is whether a government employee’s statements to his employer are in fact protected from use in subsequent criminal prosecutions. The majority is correct that an employee’s statements are protected by use immunity as soon as his employer requires him to speak under threat of losing his job. See, e.g., Uniformed Sanitation Men v. Comm’r of Sanitation, 426 F.2d 619, 626 (2d Cir.1970), cert. denied, 406 U.S. 961, 92 S.Ct. 2055, 32 L.Ed.2d 349 (1972). However, this question is not directly at issue in this case, as no subsequent prosecution was brought against Sher.
The second question (“the discipline question”), which Sher’s appeal does implicate, is whether a government employee can be fired or otherwise disciplined for maintaining his silence in the face of his employer’s questions. The majority concludes that, at least where the employee is represented by counsel, he can be disciplined for maintaining his silence at the point that use immunity attaches. In other words, according to the majority, the immunity question and the discipline question are answered using the exact same test: once the employer requires a represented employee to answer questions under the threat of discharge, the employee automatically gets the benefit of use immunity (under the immunity question) and also is automatically obliged to answer questions or face discipline (under the discipline question). This is true, the majority says, even where, as here, the employee declines to answer his employer’s questions because he has an objectively reasonable fear that his statements will not in fact be protected by use immunity.
A. Which Rule Should Govern the Discipline Question?
Given the complexity of this area of the law, it is not surprising that the circuits are split as to whether a government employer is required to advise an employee of his rights and obligations before he can be disciplined for maintaining his silence. As I read the cases, three circuits — the Fifth, Eighth, and Eleventh — have arguably held *510 that the government employer does not have a disclosure obligation. See Hill v. Johnson, 160 F.3d 469, 471-72 (8th Cir.1998) (“[T]he mere failure affirmatively to offer immunity is not an impermissible attempt to compel a waiver of immunity.”); Hester v. City of Milledgeville, 777 F.2d 1492, 1496 (11th Cir.1985) (“We fail ... to see how the city’s failure to offer the plaintiffs use immunity could make any constitutional difference.... [A]ny grant of use immunity to the plaintiffs would have been duplicative.”); Gulden v. McCorkle, 680 F.2d 1070, 1075 (5th Cir.1982), cert. denied, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983) (“Failure to tender immunity was simply not the equivalent of an impermissible compelled waiver of immunity.”). However, even among these circuits, the answer at least in the Fifth and Eleventh circuits is not wholly clear.[23]
In contrast, three circuits — the Second, Seventh, and the Federal Circuit[24] — have concluded that the government has a disclosure obligation. See Atwell v. Lisle Park Dist., 286 F.3d 987, 990 (7th Cir.2002) (“[T]he government employer who wants to ask an employee potentially incriminating questions must first warn him that because of the immunity to which the cases entitle him, he may not refuse to answer the questions on the ground that the answers may incriminate him.”); Modrowski v. Dep’t of Veterans Affairs, 252 F.3d 1344, 1351 (Fed.Cir.2001) (“Invocation of the Garrity rule for compelling answers to pertinent questions about the performance of an employee’s duties is adequately accomplished when that employee is duly advised of his options to answer under any immunity actually granted or remain silent and face dismissal.”); Sanitation Men, 426 F.2d at 627 (permitting the firing of an employee for remaining silent where “only pertinent questions” are asked “about the performance of his duties” and he is “duly advised of his options and the consequences of his choice.”). In addition, the Tenth Circuit has suggested the same result in dicta. See In re Grand Jury Subpoenas Dated December 7 and 8 v. United States, 40 *511 F.3d 1096, 1102 n. 5 (10th Cir.1994), cert. denied, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995) (“While this case does not require us to decide whether the government must affirmatively advise [an employee of his rights under Garrity ], other circuits arguably have adopted such a requirement.”).
I would adopt the latter rule — that the government employer has a disclosure obligation — because it fulfills the inherently protective nature of the Supreme Court’s decisions in Garrity and its progeny.[25] While government employees may understand that they have a Fifth Amendment right to remain silent, they may not understand the complex exceptions to that rule under Ganity. See Atwell, 286 F.3d at 990. Thus, in my opinion, the rule adopted by the majority leaves government employees vulnerable to discipline when they believe they are simply exercising a basic constitutional right. Also, more ominously, the enunciated rule permits the government to fire an employee for maintaining his silence, even where the government makes incorrect, misleading, or threatening statements regarding the employee’s rights. See Hill, 160 F.3d at 473 (Heaney, J., dissenting) (“As a practical matter, the majority’s analysis impermissibly leaves public employees ... uninformed and guessing as to how their statements may be used, what their constitutional rights are, and how to respond to ambiguous requests for statements, answers to questions, or polygraph examinations. I do not find this to be constitutionally allowable.”).
I also take issue with the majority’s decision not to adopt a firm rule to govern the discipline question. The majority declines to determine whether the government has a disclosure obligation, and instead bases its conclusion entirely on the fact that Sher was accompanied by substitute counsel at his interview. For three reasons, I believe this is a flawed basis for the majority’s conclusion. First, failing to adopt a clear rule leaves government employees in this circuit unsure of whether their employer is required to disclose their rights before they can be fired for remaining silent. This is just the kind of uncertainty that Ganity and its progeny intended to eliminate.
Second, the majority’s legal basis for drawing the line at representation is weak. While the majority may be correct that “no circuit has held that an employee who is represented by counsel is entitled to notice from his employer of his Garrity immunity,” it also seems true that no circuit has held the opposite. In other words, no circuit has drawn the line where the majority draws it today.
The majority cites two decisions — Atwell, 286 F.3d at 990-91, and Modrowski, 252 F.3d at 1352 — neither of which justifies its conclusion that a represented employee can be disciplined for maintaining his silence once use immunity has attached. First, the passage the majority cites from Atwell is pure dicta. See 286 F.3d at 991. In Atwell, the Seventh Circuit held that a discharged employee’s Fifth Amendment right was not violated because the employee failed even to attend a scheduled investigative interview. See id. Though the court discussed the significance of the employee’s legal representa *512 tion in dicta, its decision did not turn on that fact.
The majority also cites the Federal Circuit’s decision in Modrowski, a case that is inapposite to the majority’s reasoning and conclusions. As a preliminary matter, Mo-drowski, unlike the majority here, required that the employer “duly advise” the employee of his rights before he could be disciplined for remaining silent, 252 F.3d at 1351, and also took account of the employee’s reasonable belief regarding whether his statements would be used against him in a subsequent criminal prosecution, id. at 1350-51. Both of these rules are ones I would have adopted in this case. In addition, the Modrowski court reversed the employee’s failure to cooperate charge for two primary reasons: (1) the declination to prosecute letter from the U.S. Attorney’s Office was ambiguous in scope, and (2) the employee did not have full access to counsel. Id. at 1352-53. In my view, the same conditions obtained in Sher’s case. The majority makes an error of logic when it concludes that, because Modrowski held that the employee should have had full access to counsel, it must logically follow that (a) full access to counsel would have relieved the government of any disclosure obligation, and (b) with full access to counsel, the employee’s subjective view of his legal predicament would not have been relevant. These conclusions simply do not flow logically from Modrow-ski’s concern that the employee could not make an informed decision, where, among other things, he was deprived of access to counsel. To say, as Modrowski did, that not having counsel deprives one of rights, is emphatically not the same as saying, as the majority does, that having counsel automatically guarantees those rights.
The third problem with the majority’s choice to base its decision solely on the fact of representation is that, in this case, the Veterans Administration (VA) investigators denied Sher’s request to postpone his interview by a mere two days so his counsel of choice could attend the interview with him. This, despite the VA’s written assurance that Sher was entitled to a representative of his choice. The VA’s denial of Sher’s reasonable postponement request forced him to attend the interview with his attorney’s partner, who was not familiar with Sher’s case or the relevant area of law. In sum, the majority has applied a novel legal rule to a questionable factual scenario, thus yielding a conclusion that permits public employers to discipline employees for maintaining their silence while unreasonably burdening their access to legal advice.
B. The Letter from the U.S. Attorney’s Office
Unlike the majority, because I believe the government has a disclosure obligation, I think the letter from the U.S. Attorney’s Office is of crucial importance.[26] The letter stated that criminal prosecution had been declined as to three episodes of sampling by Sher. However, the letter included one date on which no sampling had occurred (February 2001) and did not mention two dates on which Sher had acknowledged requesting samples for personal use (June 2000, and December 2000). In other words, as in Modrowski, 252 F.3d at 1352, the scope of Sher’s immunity was ambiguous and Sher had a reasonable ba *513 sis to believe that his answers or their fruits could be used against him in a subsequent criminal prosecution. Therefore, he chose to invoke his right to remain silent pending clarification of the scope of his immunity.[27]
On the facts of this case, I would hold that the failure to cooperate charge violated Sher’s Fifth Amendment right and his rights under Garrity.[28] Because of the inaccurate letter from the U.S. Attorney’s Office, Sher had an objectively reasonable basis to believe that his statements could be used against him in a future prosecution. The majority’s view that the mere presence of an attorney, and a last minute replacement at that, means that we should close our eyes to the legitimately alarming impact that the letter had on Sher’s understanding of his legal predicament, is unconvincing formalism and certainly not consistent with the protective nature of the Supreme Court’s jurisprudence in this area. I therefore respectfully dissent.

. The cases cited address the question of whether immunity must be "tendered” to the employee by the government. They do not, however, address the somewhat different question, raised by Sher’s appeal, of whether discipline is permitted where the employee remains silent because he has an objectively reasonable fear that his answers could be used against him in a later prosecution. The Fifth Circuit considered this question in Arlington v. County of Dallas, 970 F.2d 1441, 1446 (5th Cir.1992), and concluded that, where the government allegedly warned the employee that his answers could be used against him in a subsequent prosecution, the employee was within his rights to remain silent and could not be disciplined for that choice. In addition, the Fifth Circuit's decision in Gulden did not reach the question of whether, had the employees actually attended a required polygraph examination, the government would have had an affirmative duty to advise them that "immunity was available.” 680 F.2d at 1076. The Eleventh Circuit's approach on this issue is also less than clear. The Hester decision can be read as only addressing the immunity question (whether use immunity' had attached where the employer did not "offer” such immunity) rather than the discipline question (whether the employee can be disciplined for maintaining his silence). See 111 F.2d at 1496. Also, the Eleventh Circuit has expressed concern, albeit in dicta, about employees who are unclear about the scope of their immunity when they decide whether to cooperate with an investigation. See Benjamin v. City of Montgomery, 185 F.2d 959, 962 (11th Cir.1986) ("[W]e cannot require public employees to speculate whether their statements will later be excluded under Ganity.").

. Because, as the majority notes, most petitions for review of a final order of the Merit Systems Protection Board are filed in the Federal Circuit, see 5 U.S.C. § 7703(b)(1), close consideration of that court's approach in Garrity cases is instructive.

. The burden on the government under such a rule would be quite low. The Federal Circuit, for example, found sufficient the government employer's use of a standardized disclosure form as it was “a model of clarity” and "amply and fully conveyed” the employee's rights. See Hanna v. Dep’t of Labor, 18 Fed.Appx. 787, 789-90 (Fed.Cir.2001).

. Even under the majority’s rule, I believe that a represented employee who reasonably believes, based on the government's words and actions, that his statements may indeed be used against him, should not be punished for invoking his constitutional right to remain silent.

. It is worth noting that Sher had previously met with investigators on two occasions, without counsel, and had answered their questions in full. In addition, after Sher refused to answer questions at his third interview, his attorney sent two follow-up letters to the VA requesting clarification of the scope of his immunity and reiterating Sher’s willingness to cooperate as long as his right against self-incrimination was protected.

. The majority dismisses Sher’s claim that the punishment imposed upon him was an abuse of discretion because, the majority says, ‘‘[c]ourts have repeatedly held that removal from employment is justified for failure to cooperate with an investigation.” However, the majority does not consider whether, if the failure to cooperate charge were not sustained, Sher’s punishment would survive review based only on the sampling charge. Because I do not believe the failure to cooperate charge should be sustained, I would reexamine Sher’s punishment on the sampling charge, in light of the Douglas factors. See Douglas v. Veterans Admin., 5 MSPB 313, 332, 5 M.S.P.R. 280 (1981). I would particularly consider the ninth Douglas factor-the clarity with which the employee was on notice of any rules that were violated. Id. Sher maintains that his understanding of the Togus sampling policy was that it only barred giving drug samples to patients, but permitted employees to receive samples for personal use. Sher’s understanding was echoed by overwhelming testimony from numerous employees (both physicians and pharmacists) that they also understood that sampling for personal use was permitted. Indeed, several witnesses testified that they had openly sampled for personal use, believing it was permissible. Arguably, the Togus facility’s written policy on sampling is consistent with the employees’ understanding: "Due to Federal regulations regarding drug diversion, SAMPLING IS NOT PERMITTED within the Medical Center.” In other words, sampling as to patients was not allowed because Togus was concerned that patients who received drug samples might sell them for money ("drug diversion”) instead of taking the medication themselves. Thus, because the VA did not make clear to its employees that sampling for personal use was prohibited, I would reconsider Sher’s punishment, based on the Douglas factors.