In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 14-3788

KIRK HOMOKY,

*Plaintiff-Appellant,*

*v.*

JEREMY OGDEN, et al.,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division
No. 12 CV 491 — **Theresa L. Springmann**, *Judge*

———————————

ARGUED SEPTEMBER 16, 2015 — DECIDED FEBRUARY 24, 2016

———————————

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Police Officer Kirk Homoky was under investigation by the Hobart Police Department for officer misconduct. As part of the investigation, he was ordered to submit to a voice stress test, a type of lie detector

test, and if he did not he would be subject to dismissal. Homoky refused to sign a release form because his participation was not voluntary, and he was charged with insubordination and placed on administrative leave. He claims that by forcing him to sign the release form under threat of dismissal, he was giving up his right against self-incrimination in violation of the Constitution. We disagree. The department informed him that any statement made would not be used against him in a criminal proceeding, so it was free to compel him to answer any question, even incriminating ones. For the first time on appeal, Homoky also asserts a stigma-plus due process claim. Because it was not presented to the district court, Homoky waived this argument, and we will not review its merits.

## I.  BACKGROUND

In October 2012, the Hobart Police Department notified Police Officer Kurt Homoky that he was under an internal investigation by the department. This investigation involved various complaints of wrongdoing while performing his professional duties, including improper conduct at a traffic stop.

On November 13, 2012, Homoky received a letter from the Hobart Deputy Chief of Police requiring him to report to the Porter County Sheriff's Department for a voice stress test on November 19, 2012. The department's letter stated that the investigation was an administrative investigation, not a criminal one. The letter also advised Homoky that he was "afforded protection of the Garrity Rule." The *Garrity* rule states that incriminating answers given during any examination of a public employee during an internal investigation of the employee's official conduct cannot be used against him

in any subsequent criminal proceeding. *See Garrity v. New Jersey*, 385 U.S. 493, 500 (1967).

On November 15, 2012, Homoky received and signed his statement of rights, which included an acknowledgment that any statements made during the investigation, or fruits of those statements, could not be used against Homoky in a subsequent criminal proceeding. It also reminded him that he was ordered to cooperate and warned that refusal to answer questions would subject him to dismissal.

On the day of the voice stress test, Homoky arrived at the Porter County Sheriff's station. Hobart Police Detectives Jeremy Ogden and Garrett Cisezweski were present at the station in the room next door to the examination room but were not administering the voice stress test. Porter County Sheriff's Department Sergeant Tim Manteuffel was to administer the test. Manteuffel instructed Homoky to sign a release form that released the Porter Country Sheriff's Department from liability and stated that Homoky "voluntarily, without duress, coercion, promise, reward or immunity" submitted to the examination. Homoky expressed concern about signing the document because he was not there voluntarily. Homoky then spoke on the phone to his attorney, and then repeated to Manteuffel that he could not sign the form. Homoky insisted that he was not there voluntarily and would not promise that he would not sue. Appellees claim that Manteuffel offered to cross out the term "voluntarily," but Homoky still refused to sign the form. However, Homoky contends that he was never given that option and that he asked Manteuffel to cross out that word, but Manteuffel stated that he could not. Cisezweski entered the room and told Homoky to sign the form. Ogden remained in the

room next door, but Homoky was aware of his presence at the station. Homoky refused to sign the form and did not take the voice stress test.

Later that same day, Hobart Police Chief Jeffrey White notified Homoky that he was on unpaid administrative leave for insubordination because of his refusal to take the voice stress test and that White had begun the process of terminating Homoky. White ordered Homoky to relinquish his Department property, including his gun and badge.

The next day, White served Homoky with written notice of the charges. The notice stated that White would be presenting formal charges against Homoky to the City of Hobart Board of Public Works and Safety on November 21, 2012. White also served a letter to the Board, and copied Homoky's attorney, stating that he would seek to terminate Homoky's employment. In response, Homoky's attorney sent the Board a document complaining about the lack of reasonable notice and due process and requested a hearing.

On November 21, 2012, the Board held its regular meeting. It changed Homoky's administrative leave from unpaid to paid and set a hearing on Homoky's termination for January 23, 2013. The Board also instructed the Hobart City Attorney to provide notice to Homoky and his counsel of the hearing and of Homoky's rights. Five days after the meeting, a news outlet quoted White as stating that Homoky was insubordinate.

A little over a week after the board meeting, Homoky's attorney notified the Hobart City Attorney that the January 23, 2013 hearing was not within thirty days of his November 20, 2012 request for a hearing, as required by Indiana Code

§34-8-3-4(c). On December 3, 2012, the Hobart City Attorney notified Homoky's attorney that the evidentiary hearing was rescheduled from January 23, 2013 to December 13, 2012, which was within the thirty-day period. However, on December 5, 2012, White moved to dismiss the insubordination charges against Homoky. The Board granted White's motion to dismiss and struck the December 13, 2012 hearing date.

Also, on December 5, 2012, White sent Homoky a letter stating that Homoky was to dress down and report to work on December 7, 2012. Homoky was assigned to garage duty, which included scrubbing toilets. The garage duty continued until January 25, 2013 when Homoky was ordered to report for modified uniform duties, which included fingerprinting and checking vehicle identification numbers.

Meanwhile, Homoky had filed his complaint in this case on November 26, 2012 against the Board, Chief White, and Detectives Ogden and Cisezweski alleging violations of his First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 and abuse of process under state law. Each defendant moved for summary judgment. The district court granted summary judgment in favor of all defendants finding no constitutional violation. Homoky does not appeal the grant of summary judgment in favor of the Board and the judgment in favor of the defendants on the First Amendment claims. He only challenges the grant of summary judgment in favor of White, Ogden, and Cisezweski as to the Fourteenth Amendment claims.

## II. ANALYSIS

On appeal, Homoky argues that the district court erred by granting Ogden's, Cisezweski's, and White's motions for

summary judgment as to his Fourteenth Amendment claims. Specifically, Homoky maintains that the attempts to force him to sign the release were attempts to compel Homoky to waive his privilege against self-incrimination and remove his *Garrity* protection. He contends that their actions were coercive in violation of the Fourteenth Amendment because he only had a choice between signing the unaltered release—which would have waived his right against self-incrimination, permitting his answers to be used against him in any subsequent criminal proceedings—or losing his job. He also argues that he suffered a constitutional violation under a stigma-plus due process theory. We review the district court's decision granting summary judgment *de novo* and construe all facts in favor of Homoky. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). "Summary judgment was appropriate if, on the evidence presented, no reasonable juror could return a verdict in [Homoky's] favor." *Id.*

Since Homoky brought his claims pursuant to 42 U.S.C § 1983, to survive summary judgment, he must present sufficient evidence to create a genuine dispute of material fact that a constitutional deprivation occurred. *See Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). There are two relevant constitutional provisions. Under the Fourteenth Amendment, statements that the government compelled a public employee to give by the threat of job loss are coerced and cannot be used in any subsequent criminal proceeding. *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967). Under the Fifth Amendment, which applies to a state actor through the Fourteenth Amendment, a state actor cannot usually compel a person to testify if the testimony would incriminate the person. *See* U.S. Const. amend. V; *see also Lefkowitz v. Turley*, 414 U.S. 70, 73, 77 (1973). However, a public employee may

be compelled to answer questions in a formal or informal proceeding investigating allegations of misconduct, even if the answers are incriminating, so long as the state does not use the statements in any subsequent criminal proceeding. *See Gardner v. Broderick*, 392 U.S. 273, 276 (1968); *see also Turley*, 414 U.S. at 77; *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977) ("Public employees may constitutionally be discharged for refusing to answer potentially incriminating questions concerning their official duties if they have not been required to surrender their constitutional immunity."); *Driebel v. City of Milwaukee*, 298 F.3d 622, 638 n.8 (7th Cir. 2002) (interpreting *Garrity* and its progeny). Disciplinary action may not be taken against the public employee for his refusal to give a statement, unless he is first advised of his *Garrity* protection that evidence obtained as a result of his testimony will not be used against him in subsequent criminal proceedings. *See United States v. Devitt*, 499 F.2d 135, 141 (7th Cir. 1974).

Homoky's claim fails because no constitutional violation occurred. Homoky never took the voice stress test, a fact he does not dispute, so he produced no coerced statements that the government might use against him in a subsequent criminal proceeding. So there was no violation of the Fourteenth Amendment's prohibition against the use of coerced statements.

There was also no Fifth Amendment violation because his employer compelled him to testify with *Garrity* protections in place. *See Gardner*, 392 U.S. at 278 (holding that a policeman, who has not waived his *Garrity* protection but refuses to answer specific questions about his official duties,

may not shield himself from dismissal by the privilege against self-incrimination). Homoky argues:

> The attempts to cause [Homoky]—over his repeated protests—to sign [the release form], in which if [Homoky] had waived as was sought, he would have attested to [the] voluntariness of [his] participation in the test[] and would have attested that the statements were given without coercion and duress. [Homoky] contends the action to cause [him] to sign the form was an attempt to force [Homoky] to waive his Fifth Amendment right not to incriminate himself as well as to obviate the [*Garrity*] warnings he had been previously given.

Appellant's Br. 14. The heart of the constitutional violation alleged is that the government cannot compel its employee to make incriminating disclosures and provide no protection against the use of the disclosures in any future criminal proceeding. *See Turley*, 414 U.S. at 84. Given protection against the use of the incriminating statements or the fruit of the statements, however, "the [government] may plainly insist that employees either answer questions under oath about the performance of their job or suffer" job loss. *See Turley*, 414 U.S. at 84. Homoky's circumstances indicate that he was ordered *to cooperate with the investigation and take the voice stress test*. The evidence does not show a genuine dispute of material fact as to whether he was *compelled to waive his Fifth Amendment right*. Homoky signed a statement of rights acknowledging that nothing he said in the course of the investigation could be used against him in a criminal proceeding. Pursuant to the investigation, he went to take the voice stress test. When he objected to signing the release at the voice stress test, he complained that he did not want to sign the release for two reasons: (1) the release stated he was there voluntarily, which he says was untrue because he was there

on White's orders;[1] and (2) he did not want to promise not to sue Porter County's Sheriff's Department. These facts do not create a triable issue regarding whether the government compelled him to give statements without *Garrity* protection. He acknowledged that he was advised of his *Garrity* protection in the days leading to the test. His argument regarding the voluntariness of submitting to the voice stress test fails because under *Garrity* and *Gardner*, the police department could compel Homoky to take the voice stress test and answer questions. So there was no constitutional violation. *See Turley*, 414 U.S. at 84; *see also Driebel*, 298 F.3d at 639 (finding "if an officer declines to cooperate with an investigation … he exposes himself to the same potential consequences [of work-related discipline or termination] as an employee in the private sphere"); *Atwell v. Lisle Park Dist.*, 286 F.3d 987, 991 (7th Cir. 2002) ("[T]here can be no duty to warn [about *Garrity* protection] until the employee is asked specific questions. The [government] employee has no right to skip the interview merely because he has reason to think he'll be asked questions the answers to which might be incriminating. He may be asked other questions as well. Or he may be told that he can take the Fifth without repercussions. Or that the interviewer will merely draw an adverse inference from the employee's taking the Fifth … ."); *Riggins v. Walter*, 279 F.3d 422, 430–31 (7th Cir. 1995) (noting that the relationship between a public employee and her employer is similar to a prisoner and the prison disciplinary committee and finding

---

[1] Again, he only argues that he did not want to sign the release form because it stated that he was taking the voice stress test voluntarily and without coercion or duress. He did not argue that the release's use of the word "immunity" waived his *Garrity* protection.

that the prison disciplinary committee's act of punishing a prisoner for refusal to take a polygraph examination, without more, did not to violate the prisoner's privilege against self-incrimination).

In sum, a police department may, without violating the Constitution, compel a police officer to answer incriminating questions and prohibit him from invoking his Fifth Amendment right when it warns the officer that it will not use the information gained in any future criminal prosecution. *Gardner*, 392 U.S. at 276; *see also Atwell*, 286 F.3d at 990. The practice is unconstitutional when the police department fails to tell the officer that it will not use the information in a subsequent criminal prosecution, a mistake that the police department did not make here. *See id.*

Furthermore, none of the other factual disputes are material. For example, whether Homoky was allowed to strike out "voluntarily" does not affect the outcome of the case. Homoky refused to obey the order to submit to the voice stress test, even though he was under *Garrity* protection. When he failed to obey that order, he was charged with insubordination. Homoky's claim that he was completely cooperating with the investigation fails because he acknowledges that he refused to comply with the order to take the voice stress test. He has no constitutional right to avoid being charged with insubordination under these facts. *See Gardner,* 392 U.S. at 278.

Homoky brought a separate due process claim against White only. We do not reach the merits of this claim because Homoky did not raise the argument that he raises on appeal before the district court. Before the district court, Homoky claimed that White deprived him of a property interest

without due process by suspending him without pay and attempting to terminate him without providing him timely notice of the termination hearing and an opportunity to be heard. Now on appeal, Homoky abandons that argument and raises his due process claim against White as a stigma-plus due process claim. A stigma-plus due process claim arises when defamatory statements by the government alter or extinguish a right or status previously recognized by state law, like when "an employee's good name, reputation, honor, or integrity [is] called into question in a manner that ma[kes] it virtually impossible for the employee to find new employment in his chosen field." *Brown v. City of Mich. City, Ind.*, 462 F.3d 720, 730 (7th Cir. 2006). Under the stigma-plus theory, Homoky contends that White deprived him of his property interest of continued employment as a police officer and damaged his reputation. We find that Homoky did not raise this argument in his opposition to the motions for summary judgment. Homoky seems to recognize this and asserts that he raised the argument generally as reputational damage. However, "a party waives the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms." *Hannemann v. S. Door Cty. Sch. Dist.*, 673 F.3d 746, 754 (7th Cir. 2012). Even liberally construing Homoky's arguments before the district court, we do not find a stigma-plus due process violation argument. So, we find that Homoky waived his stigma-plus argument since he raised it for the first time on appeal.

### III. CONCLUSION

The judgment of the district court is AFFIRMED.