NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 14, 2018[*]
Decided June 14, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-2423

| | |
|---|---|
| MICHAEL A. WILSON, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Indiana, |
| | South Bend Division. |
|     *v.* | |
| | No. 3:16-CV-126 |
| NANCY A. BERRYHILL, | |
| Acting Commissioner of Social Security, | Philip P. Simon, |
|     *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Michael Wilson applied for disability insurance benefits from the Social Security Administration based on impairments that he says in 2010 prevented him from working: degenerative disk disease, hip and foot pain, and hypertension. An

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(A)(2)(C).

administrative law judge found that Wilson was exaggerating his symptoms, that the principal medical evidence did not support his claim, and that he could perform light work. Because substantial evidence supports the ALJ's decision, we affirm.

Wilson's condition stems from a workplace injury in 1999. A welder, Wilson was lifting a large piece of steel when he felt something in his back "pop." He says that his doctor warned him that his condition could worsen without surgery. But he sought no other treatment since his injury. The record reflects a series of visits with a chiropractor spanning 18 months after 2010, but Wilson says that these records relate to another Michael Wilson, not him, and that they were misplaced in his application file.

To develop the record (as the law requires, *see Nelms v. Astrue*, 553 F.3d 1093, 1098–99 (7th Cir. 2009)), the state agency evaluating Wilson's application retained doctors to assess Wilson. In November 2011, Dr. Dorwyn Colier, a specialist in occupational medicine, performed a consultative exam and took X-rays of Wilson's back. Dr. Colier concluded that Wilson could sit, stand, walk, lift, carry, and handle objects in "a normal manner." The X-ray showed some disc degeneration at one spinal site and osteoarthrosis, but the doctor wrote that this was within normal limits. Two state-agency reviewers also reviewed the medical evidence, and they concluded that Wilson did not have any severe impairments, much less disabling ones.

Two years after the doctors evaluated Wilson, an ALJ held a hearing and decided to obtain more evidence. Wilson testified that pain in his back, left hip, and feet made it difficult to work and left him depressed. He said he could walk only a couple of minutes at a time and sit only 15 to 20 minutes at a time. He explained that he had not obtained needed treatment because he did not have insurance, his employer would not pay for it, and he could not afford a specialist. The ALJ asked him to undergo an updated consultative exam by a state-agency physician and ordered updated X-rays of Wilson's back, hips, and feet. She also ordered a psychological consultative exam.

Dr. Thomas Barbour performed the physical consultative exam in March 2013. He wrote that Wilson walked with a severe limp, struggled to get on and off the examination table, had musculoskeletal problems that interfered with daily activities, and had hypertension. Oddly, though, he wrote that Wilson could carry 100 pounds frequently *but* 10 pounds only occasionally and that Wilson could sit, stand, and walk for 10 minutes at a time *and yet* only once in an 8-hour work day. Dr. Barbour explained

the reason for Wilson's limitations with only one word: "pain"; he did not examine the X-ray results. The radiologist's report for the X-rays (that Dr. Barbour did not examine) describes conditions similar to those seen on Wilson's earlier X-ray: degenerative disk disease at the same spinal site as before, with only "moderate loss of disc space height and with a small vacuum disc noted," no foot problems, mild osteoarthritis, and sacroiliitis (inflammation) in his back. A psychological exam from the same month revealed mild to moderate depression from grief and chronic pain.

Based on this evidence, the ALJ ruled that Wilson was not disabled. During an appeal to our court, the Commissioner agreed to remand the case for further proceedings. The Commissioner instructed the ALJ to assess Wilson's explanation that he could not afford further medical treatment and to consider further Dr. Barbour's report. The remand also invited the ALJ to obtain more evidence if warranted.

Upon remand, the ALJ did not order new medical evidence but held a second hearing in 2015. Wilson testified that the pain in his back, left hip, and feet had "only gotten worse" since 2013. He said that he uses aspirin, relies on a cane to walk, and can walk, sit, and stand for only about ten minutes at a time; otherwise he lies on a sofa. He had not sought specialized treatment, he asserted, because he could not afford it. He also described his work history since 2010, when his longtime employer laid him off. He received unemployment compensation and worked sporadically as a welder from 2012 through 2014 to support his family, despite his pain. He said that because he often needed to stop work after a few days to rest his back, his employers fired him.

The ALJ applied the familiar 5-step analysis and found Wilson not disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). Wilson does not dispute the results of the first three steps; the dispute begins with two reasons the ALJ gave after step 3 for concluding that Wilson's residual functional capacity allowed for light work.

The first reason that the ALJ gave for concluding that Wilson could perform light work was that his allegation of disabling pain was not credible. After observing that Wilson never sought treatment for his asserted pain, the ALJ rejected as unpersuasive Wilson's excuse—that he could not afford treatment. The ALJ noted that Wilson had not applied for Medicaid or sought any low-cost treatment options when he had an income. The ALJ also observed that before his onset date, Wilson's doctor wrote that he seemed to be malingering. Finally the ALJ reasoned that Wilson's collection of

unemployment benefits (for which he certified that he was ready, willing, and able to work) and his frequent work as a welder since his onset date "detract[ed] from his allegation that he has been under a disability since then." The ALJ rejected Wilson's explanation that his post-onset employers discharged him because his pain led to sporadic attendance. Wilson worked for one employer for over a year doing more than light work, and he did not offer any corroboration that his employers fired him for poor attendance.

Second, the ALJ concluded that the medical evidence did not support Dr. Barbour's findings. Dr. Barbor based his findings on Wilson's complaints of pain, which the ALJ had deemed not credible. The ALJ also found Dr. Barbour's report to be cursory. The doctor wrote only "pain" to explain every finding and his findings were internally inconsistent (such as the doctor limiting Wilson to carrying 100 pounds frequently but 10 pounds only occasionally). Dr. Barbour, the ALJ added, had not reviewed the X-rays when he made his report, and the radiologist's interpretation of the X-rays reveal minimal deterioration. Finally, the ALJ wrote, the other medical opinions in the record contradicted the limitations that Dr. Barbour found. Based on this other medical evidence, the ALJ restricted Wilson to light work.

Wilson received no benefits. The ALJ finished the 5-step analysis, concluding (at step four) that Wilson could not perform his past relevant work, but (at step five) that he could perform jobs in the national economy. The Appeals Council denied review, and the district court, following the ALJ's reasoning, affirmed the denial of benefits.

In this court Wilson first argues that the ALJ improperly discounted the report from Dr. Barbour, but for two reasons the ALJ permissibly did so. First, Dr. Barbour's report rested largely on Wilson's own allegations of pain, and the ALJ reasonably found those allegations to be exaggerated. As the ALJ noted, Wilson had in the past misled his doctor about his physical limitations from pain; also he never sought treatment for his pain or even attempted to secure public insurance to pay for treatment; and finally he worked as a welder well after the alleged onset of pain. Although this work itself does not necessarily preclude a disability finding, *see Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012), Wilson's uninterrupted periods of doing *more* than light work after his alleged onset date, coupled with the evidence of past malingering and his failure even to attempt to seek public insurance for treatment, undercut his assertions of pain. We are mindful that the ALJ thought that Wilson's receipt of unemployment benefits

contradicted his claim of disability. Such benefits do not necessarily defeat an applicant's credibility. *See Cole v. Colvin*, 831 F.3d 411, 415 (7th Cir. 2016). But here the ALJ gave sufficient other reasons that we have just recounted for finding Wilson not credible. Thus the ALJ permissibly rejected Dr. Barbour's medical opinion as based on Wilson's magnified and non-credible subjective allegations. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Alvarado v. Colvin*, 836 F.3d 744, 748 (7th Cir. 2016); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001).

The ALJ gave a second, valid reason for rejecting Dr. Barbour's report: Besides being cursory, it was inconsistent with Dr. Colier's earlier consultative exam, with two reviewing doctors' opinions, with the recent X-rays, and even with itself internally. *See Stepp v. Colvin*, 795 F.3d 711, 719 (7th Cir. 2015) (affirming ALJ's rejection of medical opinion that was inconsistent with other medical evidence). The X-rays were taken contemporaneously with Dr. Barbour's report, but Dr. Barbour did not review them. From the radiologist's comments about those X-rays, the images do not seem to show significant change from the X-rays that Dr. Colier evaluated earlier. We are aware that the ALJ did not ask a physician to opine about the functional limitations that the later X-ray results implied. But given the radiologist's report of only modest disc-height loss and minimal osteoarthritis, and Dr. Colier's judgment from similar X-ray results that Wilson could work, the X-rays do not support Dr. Barbour's report. An ALJ has substantial discretion regarding which doctor to believe, *see Dixon*, 270 F.3d at 1178, and the ALJ gave suitable reasons for acting within that discretion here.

Wilson replies that most of the medical evidence contradicting Dr. Barbour is stale. He observes that Dr. Colier's exam was from 2011, the two state-agency opinions were from the same time, and the most recent X-rays are from 2013. Wilson contends that this evidence is not reliable because disc degeneration is a progressive disease and he testified in 2015 that his condition had worsened since 2013. A two-year gap in the medical record, in the context of a degenerative disease, may indeed be prejudicial. *See Nelms v. Astrue*, 553 F.3d 1093, 1098–99 (7th Cir. 2009). But Wilson had the burden to prove disability. 20 C.F.R. § 404.1512(c); *see also Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). Even a pro se litigant like Wilson bears responsibility for developing the record, *see Johnson v. Barnhart*, 449 F.3d 804, 808 (7th Cir. 2006). And nothing prevented him from asking to update records to support his claim. *See Nelms*, at 1098 & n.1 (evaluating claimant's additional records for limited purpose of demonstrating prejudice).

Moreover, this court "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *See Nelms*, 553 F.3d at 1098; *see also Thomas v. Colvin,* 745 F.3d 802, 807-08 (7th Cir. 2014); *Luna v. Shalala,* 22 F.3d 687, 692 (7th Cir. 1994). By the time of the ALJ's decision, the Commissioner had ordered three consultative exams, two sets of X-rays (including an updated X-ray that appeared to show no material changes to his condition), and two reviewing opinions. Only Dr. Barbour's flawed opinion supported Wilson's case. We conclude that the ALJ fulfilled his duty to develop the record and that the record's evidence substantially supports his decision.

Wilson's last argument is that the ALJ erred by considering the chiropractor's treatment records because, Wilson says, he is not the patient in question—but that argument is waived because he did not present it to either the ALJ or the district court. *See Homoky v. Ogden*, 816 F.3d 448, 455 (7th Cir. 2016). In any case, any error is harmless because the ALJ's decision adequately rested on other evidence in the record. *See McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) (it is a waste of time to remand when the court is convinced that the ALJ would reach the same result).

                                                                                          AFFIRMED