In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3474

DUNCAN PLACE OWNERS ASSOCIATION,
on its own behalf and as assignee
of the Association Members,

*Plaintiff-Appellant,*

*v.*

DANZE, INC., f/k/a GLOBE UNION
AMERICA CORPORATION, and
GLOBE UNION GROUP, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 01662 — **Edmond E. Chang**, *Judge.*

ARGUED APRIL 4, 2018 — DECIDED JUNE 19, 2019

Before WOOD, *Chief Judge*, and BAUER and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. In 2009 faucets manufactured by Illinois-based Danze, Inc., were installed in all 63 units of a new condominium building in Seattle, Washington. In the

years that followed, some of the faucets failed, causing damage to the building and replacement costs. The condominium association, Duncan Place Owners Association, filed a proposed class-action suit against Danze raising multiple claims for relief, including breach of express warranty, unjust enrichment, negligence, and strict product liability. The district judge dismissed all but one of the claims and later entered summary judgment on the sole remaining claim.

Duncan Place appeals, seeking reinstatement of the claims that were dismissed on the pleadings. We affirm, with one narrow exception. The Washington Product Liability Act ("WPLA" or "the Act") subsumes all common-law product-liability claims, so we construe Duncan Place's negligence and strict-liability claims as one cause of action under the Act. In a suit for damages caused by a defective product, Washington's "independent duty doctrine" (formerly known as the "economic loss doctrine") generally bars recovery in tort for direct and consequential economic losses stemming from the product's failure—that is, damages associated with the "injury" to the product itself. But the doctrine does not bar recovery for damage to *other* property caused by the defective product. *See Eastwood v. Horse Harbor Found., Inc.*, 241 P.3d 1256, 1265 (Wash. 2010) (en banc). Duncan Place alleges in general terms that the defective faucets caused damage to other condominium property. To that limited extent, the WPLA claim is not blocked by the independent-duty doctrine and should have been allowed to proceed.

Duncan Place's arguments for reinstatement of its warranty and unjust-enrichment claims are new on appeal. Arguments not raised in the district court are waived, so we

affirm the dismissal of the warranty and unjust-enrichment claims.

## I. Background

We take the following factual allegations from Duncan Place's second amended complaint, accepting them as true for present purposes. When the Duncan Place condominium complex was built in 2009, the developers installed Danze faucets in the bathrooms of each of the 63 units. The water hoses in Danze's faucets are made from an inferior low nickel stainless-steel alloy that makes them vulnerable to corrosion and cracking when put to normal use. As a result several of the faucets failed causing "extensive property damage" and replacement costs.

Danze's "limited lifetime warranty" guarantees the quality of its faucets and promises to replace any parts that prove defective. Nonetheless, Danze refused to repair or replace the faucets.

The Duncan Place Owners Association filed this lawsuit in federal court in the Northern District of Illinois on behalf of itself, the condominium's 63 unit owners, and a proposed nationwide class of original consumer end-users of Danze faucets with a steel-braided supply hose. The suit asserted claims under Washington law, including breach of express warranty, unjust enrichment, negligence, and strict product liability, as well as other state-law claims that have since dropped out of the case.

Danze moved to dismiss on the ground that Duncan Place lacked associational standing to assert the rights of the unit owners. The judge agreed and dismissed the claims brought on their behalf. Duncan Place then amended its

complaint to reflect that it had obtained assignments from 41 of the 63 unit owners, eliminating the need for associational standing to support its assertion of their rights.

Danze again moved to dismiss. The judge granted the motion for the most part. He held that Washington's independent-duty doctrine barred the claims of negligence and strict product liability and dismissed them. The judge also dismissed the unjust-enrichment claim because it was premised on fraud but did not satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

In the same order, the judge explained that to prevail on a claim for breach of an express warranty under Washington law, a plaintiff must show that he was aware of the warranty. Allegations of that sort did not appear in the amended complaint, so the judge gave Duncan Place an opportunity to investigate whether it had a good-faith basis to allege that any of the 41 unit owners knew of the warranty. After several months of investigation, Duncan Place was unable to make those allegations in good faith with respect to any of the unit owners. The judge dismissed the express-warranty claim brought on the unit owners' behalf.

That left only Duncan Place's own claim for breach of express warranty. The judge eventually entered summary judgment for Danze on that claim, setting up this appeal.

## II. Discussion

Duncan Place does not challenge the judge's summary-judgment ruling. This appeal focuses instead on the claims that were dismissed on the pleadings—namely, the claims for breach of express warranty, unjust enrichment, negli-

gence, and product liability. Waiver doctrine precludes our consideration of some of Duncan Place's arguments. For what remains, our review of the judge's dismissal order is de novo. *Catinella v. County of Cook*, 881 F.3d 514, 518 (7th Cir. 2018).

## A. Warranty and Unjust-Enrichment Claims; Waiver

Duncan Place seeks reinstatement of the warranty and unjust-enrichment claims brought on behalf of the unit owners. Its arguments are new on appeal and thus are waived.

Taking the warranty claim first, as we've just explained, the judge ultimately dismissed this claim because Duncan Place could not allege in good faith that any of the unit owners were aware of Danze's warranty at the time of purchase. On appeal Duncan Place argues that Washington law requires that element if the claim is based on representations contained in advertisements but *not* if the claim is based on a standard written warranty like Danze's lifetime limited warranty.

We don't need to decide if that is an accurate statement of Washington law. Duncan Place never raised this specific legal argument in the district court. Normally "a party waives the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court, even though the issue may have been before the district court in more general terms." *Homoky v. Ogden*, 816 F.3d 448, 455 (7th Cir. 2016) (quoting *Hannemann v. Door Cty. Sch. Dist.*, 673 F.3d 746, 754 (7th Cir. 2012)). There is an exception, however. If the district court raises an issue sua sponte and the appellate brief is the first

opportunity to discuss it, the waiver rule does not preclude review. *Prop. & Cas. Ins. Ltd. v. Cent. Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 323 n.7 (7th Cir. 1991).

The exception to the waiver rule doesn't open the door for review of this argument. It's true that the judge sua sponte raised the issue about the unit holder's knowledge of the warranty. Ruling on the second motion to dismiss, he informed the parties that under Washington law the unit owners could prevail on the warranty claim only if they knew of Danze's warranty at the time of purchase. The amended complaint was silent on this subject, so the judge gave Duncan Place an opportunity to file a position statement clarifying the matter. He also warned that the warranty claim would be dismissed if Duncan Place's follow-up submission revealed that the unit owners did not know about the warranty at the time of purchase.

In the months that followed, Duncan Place filed three position statements on this subject. In the first and second, it reported that it had been unable to confirm whether 39 of the 41 unit owners were aware of Danze's warranty. Two owners initially said they were aware of it but later recanted. In neither position statement did Duncan Place advance an argument that the knowledge requirement did not apply at all.

After the second position statement but before the third, the judge held a hearing at which Danze announced its intention to renew its motion to dismiss based on Duncan Place's inability to allege that the unit owners were aware of the warranty. Duncan Place did not take this opportunity to argue that Washington law distinguishes between represen-

tations made in advertisements and representations made in a standard written warranty like the one at issue here.

Soon after this hearing, Duncan Place filed its third and final position statement. Like the first two, this one did not so much as hint that the knowledge requirement was inapplicable because the claim alleged breach of a standard written warranty. Rather, Duncan Place asked for more time to investigate the extent of the unit owners' knowledge. At yet another hearing a few weeks later, the parties again discussed the knowledge issue. As before, Duncan Place never suggested that knowledge of the warranty was not required.

In short, Duncan Place had multiple opportunities to advance the argument it now raises on appeal. At every turn, it failed to do so. That's a waiver. And because Duncan Place makes no other argument to support reinstatement of the warranty claim on behalf of the unit owners, we affirm the dismissal of that claim.

Next up is the claim for unjust-enrichment. The judge ruled that the unjust-enrichment claim is premised on fraud and thus the amended complaint had to satisfy the heightened pleading requirements of Rule 9(b). Because it did not, the judge dismissed the claim.

Duncan Place concedes on appeal that its fraud allegations are inadequate under Rule 9(b). It argues instead that the judge should have excised the fraud allegations and evaluated whether the remaining nonfraud allegations stated a claim for unjust enrichment under Rule 8(a).

It is not clear to us that there is anything left of the unjust-enrichment claim if the fraud allegations are disre-

garded. But we don't need to sort that out. This argument
too is waived because Duncan Place never raised it in the
district court.

Duncan Place insists that it preserved the argument by
contending below that Rule 9(b) does not apply *at all*. But
that general contention is insufficient to preserve the specific
argument Duncan Place advances here. *See Homoky*, 816 F.3d
at 455. Duncan Place points out that its response to Danze's
second motion to dismiss cited *Goodman v. HTC America, Inc.*,
No. C11-1793MJP, 2012 WL 2412070, at *9 (W.D. Wash.
June 26, 2012), which discusses the two-step approach that it
argues should have been applied here. *Goodman* indeed
addresses that subject, but Duncan Place never drew the
judge's attention to the relevant part of the case. Instead, it
relied on *Goodman* for a different purpose. Because Duncan
Place raises no other argument to support reinstatement of
the unjust-enrichment claim, we affirm the dismissal of that
claim.

## B.  Product-Liability Claim

The judge dismissed Duncan Place's claims for negli-
gence and strict product liability, reasoning that Washing-
ton's independent-duty doctrine blocks recovery. That's
partially correct. In a suit for damages caused by a defective
product, Washington's independent-duty doctrine generally
bars recovery in tort for economic losses associated with the
injury to the product itself, but it does not bar recovery of
damages for injury to *other* property caused by the defective
product.

At the outset we note that the Washington Product
Liability Act "created a single cause of action for product-

related harms, and supplants previously existing common law remedies, including common law actions for negligence." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 858 P.2d 1054, 1066 (Wash. 1993) (en banc); *see also* WASH. REV. CODE § 7.72.010(4). We therefore construe the claims styled as negligence and strict product liability as one WPLA claim.

Under the WPLA, a manufacturer is liable for harm proximately caused by its defective products, WASH. REV. CODE § 7.72.030(1), but not all harms are cognizable under the Act, *id.* § 7.72.010(6). Economic losses arising from defective products often trigger remedies in both contract and tort, and Washington's independent-duty doctrine—formerly known as the economic-loss doctrine—provides a test for "distinguish[ing] between claims where a plaintiff is limited to contract remedies and cases where recovery in tort may be available." *Eastwood*, 241 P.3d at 1261–62.

In *Eastwood* the Washington Supreme Court renamed and substantially clarified the contours of the doctrine. The court began with the terms of the WPLA, which codified the "tort duty to avoid product designs and construction that are unreasonably dangerous."[1] *Id.* at 1265; *see* WASH. REV. CODE § 7.72.030(1)–(2). The Act's definition of "harm" includes "any damages recognized by the courts of this state" but specifically excludes "direct or consequential economic loss under Title 62A," the state's version of the Uniform Commercial Code. WASH. REV. CODE § 7.72.010(6). This limiting language "leav[es] the law of sales contracts as the sole

---

[1] The Act also covers harm caused by inadequate product warnings, *see* WASH. REV. CODE § 7.72.030(1)(b)–(c)), but that's not at issue here.

source of a plaintiff's remedy for economic loss." *Eastwood*, 241 P.3d at 1265.

But this limitation applies to economic losses associated with a breach of contractual duties. Under Washington's independent-duty doctrine, a product-related injury "is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." *Id.* at 1262. To determine whether a harm can be reasonably traced to a tort duty independent of the contract, the Washington Supreme Court has adopted a "risk of harm" test that endeavors to "distinguish[] between a harm that implicates only the contract and a harm that implicates the independent [tort] duty as well." *Id.* at 1265. Relevant factors in the risk-of-harm analysis include the nature of the product defect, the type of risk at issue, and the manner in which the injury arose. *Id.*

Crucial for our purposes, however, *Eastwood* explains that "[w]hen a product defect results in a personal injury or *damage to other property*, the cause can plainly be a breach of the tort duty." *Id.* (emphasis added). On the other hand, "[w]hen a product defect results in injury only to the product itself, … the risk of harm must be carefully analyzed." *Id.* Accordingly, Washington law allows tort recovery for economic loss associated with the product's failure—i.e., tort recovery for "injury" to *the product itself*—only if the product is hazardous and poses an unreasonable risk of harm under the "risk of harm" test, implicating the "safety interests of the WPLA." *Id.*

So the first step in the analysis is to determine whether the plaintiff seeks recovery for losses associated with damage to the product itself, on the one hand, or for personal

injury or damage to other property, on the other. *Id.* If the injury falls in the first category, then the next step requires application of the risk-of-harm test to determine whether the injury is nonetheless cognizable in tort under the Act. *Id.* If it falls in the second category, however, the claim is cognizable under the Act without further analysis because "the cause can plainly be a breach of the tort duty" independent of the contract. *Id.*

Here the judge acknowledged that the claim seeks recovery for damage to other property—i.e., other parts of the condominium building—caused by the defective faucets. But he went on to conduct a risk-of-harm analysis as if Duncan Place sought to recover for faucet-related injuries alone. That was error. The amended complaint alleges that Danze's defective faucets caused "extensive damage" to the condominium building. To that extent, the WPLA claim should have been allowed to move forward.

There is an important limitation, however. As we've explained, Duncan Place obtained assignments from 41 unit owners, and everyone agrees that it may assert the rights of those unit owners. On remand the WPLA claim may proceed to the extent that it alleges that Danze's defective faucets caused damage to other property *in those 41 units*. As it stands, the amended complaint contains specific allegations only with respect to two unit owners; the allegations about "extensive damage" to the condominium building are otherwise quite general. These generalized allegations support an inference that the defective faucets caused damage to common condominium property as well, and we take this to mean that the homeowners' association also asserts

this claim on its own behalf. To that additional extent, the claim may proceed to factual development.

Finally, Duncan Place insists that it may also assert the rights of the unit owners from whom it did not obtain assignments. This argument verges on frivolous. "[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). "'[I]ndividual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members, but … such participation would be required in an action for damages to an association's members … ." *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). Associational standing is inappropriate if "whatever injury may have been suffered is peculiar to the individual members concerned, and both the fact and extent of injury would require individualized proof." *Warth*, 422 U.S. at 515–16; *see also Sanner v. Bd. of Trade of City of Chi.*, 62 F.3d 918, 923 (7th Cir. 1995) (forbidding a farming association from asserting standing on behalf of its members where the suit would "require the calculation of damages for each of the individual farmers").

Duncan Place has no viable claim for prospective relief. What it casts as a plea for declaratory and injunctive relief is instead a straightforward claim for damages. Duncan Place seeks a declaration announcing that all Danze faucets manufactured from 2000 to the present have defects of which

Danze was well aware.[2] This request reflects a misunder-
standing of the purpose of declaratory judgments. A declara-
tory judgment serves to "settle the particular controversy
and clarify the legal relations at issue." *NUCOR Corp., v.
Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579
(7th Cir. 1994) (quoting *Sears, Roebuck & Co. v. Am. Mut. Liab.
Ins. Co.*, 372 F.2d 435, 438 (7th Cir. 1967)). A declaration that
Danze produced defective faucets would not settle the
controversy between Duncan Place and Danze or clarify
their legal relationship. It would only lay the groundwork
for a claim for damages.

And associational standing cannot support a damages
claim on behalf of the nonassigning unit owners. There's no
question that each unit owner with a viable claim would
have to provide "individualized proof" of "the fact and
extent of injury" to the condominium unit. *Warth*, 422 U.S. at
515–16.

In sum, we AFFIRM the dismissal of Duncan Place's war-
ranty and unjust-enrichment claims, REVERSE the dismissal
of Duncan Place's WPLA claim, and REMAND for further
proceedings consistent with this opinion.

---

[2] Duncan Place also seeks declaratory and injunctive relief regarding
Danze's failure to honor its warranty. We're affirming the dismissal of the
warranty claim, so we need say no more about associational standing to
pursue these remedies.