**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2020[*]
Decided October 23, 2020

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-1829

| | |
|---|---|
| GREGORY JONES,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 17-cv-1248 |
| ANDREW TILDEN and RILIWAN<br>OJELADE,<br>    *Defendants-Appellees*. | Joe Billy McDade,<br>*Judge*. |

**O R D E R**

Based on his own deposition testimony, Gregory Jones, an Illinois prisoner at the Pontiac Correctional Center, lost at summary judgment on his claim that a physician's assistant was deliberately indifferent to his medical needs. In his complaint, Jones had accused the assistant of failing to issue him a bottom-bunk permit after he had fallen from his upper bunk. But the district court observed that his accusation could not be

---

[*] This appeal is successive to appeal no. 18-1286 and is decided under Operating Procedure 6(b) by the same panel. We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

true because Jones had testified that he first fell from his upper bunk after he saw the assistant. Jones now argues that his prison grievance contradicts his deposition testimony and warrants a trial on his claim. Because the grievance is unsworn and in it Jones does not state that he told the assistant about his falls, we affirm.

Jones saw Riliwan Ojelade, a physician's assistant, twice regarding pain. He first saw him in March 2016 concerning shoulder pain, a common complaint among inmates like Jones who lift weights. Ojelade's physical exam of Jones showed that he had full range of motion in his shoulder. Still, Ojelade prescribed naproxen for Jones's pain. At his second visit, in June 2016, Jones wanted another pain reliever to treat his knee and lower-back pain. (Jones had injured his back two years earlier.) Jones asserts (and Ojelade denies) that he also requested a lower-bunk permit. Ojelade examined Jones and found no abnormalities or injuries: Jones's spine was aligned, he had no atrophy or muscle weakness, he had normal range of motion, his muscles were symmetrical, and his knees had no joint deformity, redness, or swelling. Ojelade advised Jones that his back pain would likely get worse as he ages (he was 57) and prescribed Motrin for the pain. (In his reply brief on appeal, Jones asserts that Ojelade did not examine him at this visit, but he omitted the argument in his opening brief, so it is waived. *See Carroll v. Lynch*, 698 F.3d 561, 568 (7th Cir. 2012). In any event, the argument contradicts Jones's own statement of the facts where he recounts Ojelade's exam of his back and knees.)

After filing a grievance against Ojelade for not issuing him a lower-bunk permit, Jones sued Ojelade under 42 U.S.C. § 1983, and Ojelade moved for summary judgment. (Jones also sued Dr. Andrew Tilden, but he develops no argument for reviving this claim, so we do not consider it. *See Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020).) Ojelade argued that at the June exam he saw no substantial risk of harm to Jones from the upper bunk. First, his exam of Jones and Jones's muscularity showed no need for a lower-bunk permit. Second, Jones never said that he had fallen from his upper bunk. As proof, Ojelade cited Jones's deposition testimony where Jones swore (consistent with his complaint) that "the first time [he] fell was September of '16," months after the exam. Without citing any evidence, Jones replied that Ojelade knew at the June exam that he had fallen from his upper bunk.

The district court entered summary judgment for Ojelade. It ruled that Jones did not support his assertion that Ojelade knew at the June exam about falls from his upper bunk, so Ojelade had no reason to issue him a lower-bunk permit. Indeed, the court stated, Jones's testimony—that he first fell from his bunk months after that exam—refuted his claim. The court noted that Jones had attached to his complaint his grievance

about Ojelade but concluded that it did not warrant a trial. In it, Jones asserted that he saw Ojelade for back pain in June, after he fell from his bunk. But the only statement in the grievance that he reports making to Ojelade at the June exam was that he sometimes sleeps on the cell floor "to accommodate cell favors."

On appeal, Jones offers two arguments for why a jury should decide whether he notified Ojelade at the June exam of his previous falls, but both are unavailing. First, in his view, the district court improperly weighed the contents of his grievance (which states that falls occurred before his June exam) against his deposition testimony that his falls occurred only after that exam. Because this case was decided at summary judgment, we view facts properly before the court in the light most favorable to Jones. *See Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (en banc). But the grievance does not create a fact dispute regarding notice to Ojelade about falls. It is neither sworn nor a declaration that "set[s] out facts" of whether or when Jones told Ojelade that he had fallen from his bunk. *See* FED. R. CIV. P. 56(c)(4); *see also Steffek v. Client Servs., Inc.*, 948 F.3d 761, 769 (7th Cir. 2020); *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 578–79 (7th Cir. 2015). True, in it Jones asserts that he saw Ojelade after he had fallen from his bunk. But he does not assert in the grievance that he reported falls to Ojelade; he told Ojelade only that he sleeps on the cell floor to accommodate others. Thus, a jury could not reasonably infer from the record that at the June exam Jones notified Ojelade about falls. For the only record evidence is Ojelade's declaration that during this exam Jones complained only of back and knee pain, and Jones's testimony that his falls occurred months after his June exam. Consequently, no trial on the issue of notice is warranted.

Second, Jones contends that the district court overlooked his argument that his deposition testimony was the result of his confusion about the dates of his falls. This argument is also fatally flawed. He first made it only after he appealed, when he asked the district court for leave to proceed in forma pauperis. This was too late, because Ojelade cited Jones's deposition testimony in his motion for summary judgment, and in response Jones did not contend that he had been confused. So he waived the argument. *See Duncan Place Owners Ass'n v. Danze, Inc.*, 927 F.3d 970, 974–75 (7th Cir. 2019). Moreover, waiver to the side, Jones did not swear in an affidavit that he had been confused. So the district court could not have credited the argument under the rule that limits a party's ability to contradict his own deposition testimony. *See James v. Hale*, 959 F.3d 307, 315–17 (7th Cir. 2020).

We have considered Jones's other arguments, and none has merit.

AFFIRMED