In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 23-3337 & 24-1435

JOE FEAZELL,

*Plaintiff-Appellant*,

*v.*

WEXFORD HEALTH SOURCES, INC. and PAMELA E. HART,
Administrator of the Estate of Andrew H. Tilden,

*Defendants-Appellees*.

———————

Appeals from the United States District Court for the
Central District of Illinois.
No. 19-cv-1340 — **Karen L. McNaught**, *Magistrate Judge*.

———————

ARGUED JANUARY 29, 2025 — DECIDED JUNE 11, 2025

———————

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Joe Feazell, an inmate at Pontiac Cor-
rectional Center, sued his doctor, Andrew Tilden, and the
prison's healthcare contractor, Wexford Health Sources, Inc.
He alleged that Wexford and Dr. Tilden were deliberately in-
different to his hemorrhoid condition and significant gastro-
intestinal bleeding, in violation of the Eighth Amendment.

The district judge initially denied the defendants' motion for summary judgment, and the parties consented to proceed before a magistrate judge. The defendants then moved for reconsideration of the summary judgment decision. The magistrate judge agreed that reconsideration was proper and granted summary judgment for Wexford and partial summary judgment for Dr. Tilden.

Feazell went to trial on his remaining claim against Dr. Tilden. He did not call an expert witness to testify to his medical diagnoses or their causes. Instead, Feazell attempted to provide testimony on these matters himself. The court barred him from doing so, and the jury returned a verdict for the defense.

Feazell appeals both the magistrate judge's summary judgment decision and her evidentiary rulings. Finding no error in either, we affirm.

## I. Background

Feazell first entered state custody in 2014. He began receiving treatment for his longstanding hemorrhoid condition and intermittent bleeding soon after. His providers prescribed him hemorrhoid creams, pain relievers, and iron supplements. Then, in the fall of 2018, Feazell was transferred to Pontiac Correctional Center.

In Feazell's first months at Pontiac, he saw medical staff for a variety of ailments—but not his hemorrhoid condition. Feazell had his first interaction with Dr. Tilden in December of 2018, during one of these many visits. At that appointment, Dr. Tilden reviewed Feazell's lab results and conducted a baseline exam. One of Feazell's labs indicated that he had abnormally low levels of hemoglobin, a sign of anemia. Yet Dr.

Tilden did not document the abnormal lab value in his clinical note or take follow-up action.

About one week later, Feazell's psychiatrist contacted Dr. Tilden to express concern about his labs. Dr. Tilden waited another week to act, at which point he called Feazell to the prison's urgent care. During this visit, Feazell informed medical staff that he had suffered from rectal bleeding for six months and had shortness of breath when he exerted himself. Urgent care staff ordered repeat lab testing, which showed that Feazell's hemoglobin levels had fallen further.

That same day, Dr. Tilden contacted a local hospital to request that it admit Feazell for testing. The hospital advised him that admission was unnecessary. Feazell began to vomit shortly thereafter, however, prompting his emergency admission. Meanwhile, Feazell's hemoglobin levels declined further. By the time he was admitted to the hospital, he needed a blood transfusion.

Feazell's inpatient physicians medically stabilized him and then discharged him back to Pontiac. In his discharge orders, Feazell's doctors recommended an outpatient colonoscopy to confirm the source of his bleeding. Dr. Tilden entered the referral, Wexford's Utilization Management department approved it, and within six weeks of his hospital discharge, Feazell underwent the procedure.

The colonoscopy revealed severe hemorrhoids. So his gastroenterologist recommended he consult with a colorectal surgeon. Two days after that, on February 20, Feazell met with

Dr. Tilden to discuss follow-up care. Dr. Tilden ordered the surgical consult a month and a half later.[*]

Once Dr. Tilden entered the referral, the system's gears turned quickly. Wexford approved the referral, and in late May Feazell saw a surgeon, who recommended he undergo a hemorrhoidectomy. Four days after Feazell's surgical consult, Dr. Tilden referred him for surgery. On July 2, 2019, approximately one month after this final referral, Feazell underwent surgery to remove his hemorrhoids.

Following his surgery, Feazell commenced this suit against Dr. Tilden and Wexford. In his pro se complaint, he invoked 42 U.S.C. § 1983 and alleged that beginning in 2015, and continuing until his hemorrhoid surgery in July of 2019, the defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.

Feazell asserted two distinct claims against Dr. Tilden: that he was deliberately indifferent (1) when he failed to promptly respond to Feazell's abnormal lab results (his "low hemoglobin claim"), and (2) when he failed to adequately treat Feazell's hemorrhoids (his "hemorrhoid claim"). Feazell further alleged that Wexford, too, was liable because its protocol for treating his hemorrhoids was ineffective and deliberately indifferent to their severity.

The district court denied the defendants' motion for summary judgment, concluding that a rational juror could find for Feazell. The district court also instructed the parties to

---

[*] The record does not clarify why Dr. Tilden waited to order the consult. Regardless, Feazell does not argue the turnaround time was improper.

consider consenting to trial by a magistrate judge. All parties consented and the district court transferred the case.

Shortly thereafter, the defendants moved for reconsideration of the summary judgment decision. Magistrate Judge McNaught granted the motion and entered summary judgment for Wexford and partial summary judgment for Dr. Tilden. As to Wexford, Judge McNaught reasoned that because Feazell had failed to offer any evidence that the injury he alleged was attributable to a Wexford policy or practice, his *Monell* claim could not survive summary judgment.

Judge McNaught also granted summary judgment for Dr. Tilden on Feazell's hemorrhoid claim, reasoning that Feazell had offered no evidence that Dr. Tilden knew of his hemorrhoids prior to his colonoscopy. And Feazell's recounting of his treatment after Dr. Tilden became aware of his hemorrhoids did not evince deliberate indifference. Feazell's new argument—that Dr. Tilden was deliberately indifferent to the prison's failure to provide him with post-operative sitz baths, as prescribed—did not alter the court's calculus. Feazell had not included his sitz bath allegations in his complaint, so Judge McNaught deemed them waived.

Only on his low hemoglobin claim did Judge McNaught find that Feazell had demonstrated a genuine issue of material fact. Feazell took the claim to trial, where he attempted to testify to the effects of his bleeding and the results of his colonoscopy. The court sustained objections to this testimony, and the jury ultimately returned a verdict for the defense.

## II. Discussion

Feazell now appeals the magistrate judge's summary judgment decision. He also challenges the court's evidentiary

rulings at trial. We review a grant of summary judgment de novo, drawing all reasonable inferences in the nonmovant's favor. *Balle v. Kennedy*, 73 F.4th 545, 553 (7th Cir. 2023). We review a trial court's evidentiary rulings for abuse of discretion. *United States v. Pierson*, 89 F.4th 976, 985 (7th Cir. 2024).

**A. Eighth Amendment Claim Against Wexford**

"The Eighth Amendment's ban on 'cruel and unusual punishments' obligates prison officials to provide medical care to prisoners in their custody." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 234 (7th Cir. 2021) (citation omitted). So deliberate indifference to a prisoner's objectively serious medical condition violates the Constitution. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016); *see also Farmer v. Brennan*, 511 U.S. 825, 828, 837 (1994).

Section 1983 supplies a private right of action to prisoners seeking to enforce their Eighth Amendment rights. *Dean*, 18 F.4th at 235; 42 U.S.C. § 1983. But because municipalities are not vicariously liable for constitutional torts committed by their employees, plaintiffs who wish to invoke § 1983 against a municipality must prove that a government policy or custom caused their constitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978); *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021).

*Monell*'s rule against vicarious liability extends to private corporations, like Wexford, which act under color of state law. *Arce v. Wexford Health Sources Inc.*, 75 F.4th 673, 682 (7th Cir. 2023). Feazell thus must point to a Wexford policy or custom that was "the moving force" behind his federal civil rights violation. *Dean*, 18 F.4th at 235 (quoting *First Midwest Bank*

*Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021)). "This 'rigorous causation standard' requires 'a direct causal link between the challenged municipal action and the violation of [the plaintiff's] constitutional rights.'" *Id.* (alteration in original) (quoting *LaPorta*, 988 F.3d at 987).

Before our court, Feazell contends that Wexford's "Collegial Review" policy of scrutinizing external referrals at weekly meetings both denied him appropriate care in the four years prior to his winter 2018 hospital admission and delayed his surgical care afterwards.

Denying or delaying necessary treatment to an incarcerated person suffering from avoidable pain can violate the Eighth Amendment. *Howell*, 987 F.3d at 653. Yet Feazell never argued in the district court that Wexford's Collegial Review policy caused him to receive deficient care prior to his winter 2018 hospitalization, so he has waived the contention. *See Duncan Place Owners Ass'n v. Danze, Inc.*, 927 F.3d 970, 974 (7th Cir. 2019) ("[A] party waives the ability to make a specific argument for the first time on appeal when the party failed to present that specific argument to the district court …." (internal quotation marks omitted)).

Feazell's claim that Collegial Review unconstitutionally delayed his post-hospitalization treatment fares no better. He identifies three delays allegedly attributable to Collegial Review. They include: (1) a two-week delay in receiving a routine follow-up appointment after his hospital discharge, (2) a two-month delay in receiving a colonoscopy, and (3) a two-month delay in receiving a post-operative follow-up appointment.

Whether a delay in medical care constitutes deliberate in-difference depends on the seriousness of the prisoner's condition and the ease of providing treatment. *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022); *see also McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Yet Feazell offered no evidence of the standard of care for severe hemorrhoids, or of the availability of the treatments he alleges Wexford delayed.

Moreover, Feazell's cited delays—considered individually or in tandem—were not "so obviously wrong" that a layperson may draw the inference that they amounted to "a substantial departure from accepted medical judgment," as is required for a finding of deliberate indifference. *See Whiting*, 839 F.3d at 663. Feazell thus failed to demonstrate a genuine issue of fact that Wexford's Collegial Review policy caused a violation of his Eighth Amendment rights.

**B. Eighth Amendment Claims Against Dr. Tilden**

Feazell also appeals the magistrate judge's entry of summary judgment for Dr. Tilden on his hemorrhoid claim. He challenges the court's holding that Dr. Tilden was unaware of Feazell's hemorrhoids prior to his colonoscopy, and its determination that he waived his sitz bath allegations.

The Supreme Court has instructed that officials may only be deliberately indifferent to *actually known* risks. *Farmer*, 511 U.S. at 837; *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). To survive summary judgment on his pre-hospitalization claim, then, Feazell must establish a genuine issue of material fact that Dr. Tilden had subjective knowledge of his hemorrhoids before receiving the results of his colonoscopy.

Proffering direct evidence of subjective knowledge is the simplest way to carry this burden, but circumstantial evidence can also suffice. *Petties*, 836 F.3d at 728. "[T]he existence of documents the doctor regularly consulted which advised against his course of treatment, evidence that the patient repeatedly complained of enduring pain with no modifications in care, [or] inexplicable delays or departures from common medical standards," for example, may indicate actual knowledge of a substantial risk. *Id.* at 731.

Here, Feazell failed to come forward with either direct or circumstantial evidence of Dr. Tilden's knowledge of his hemorrhoids prior to his colonoscopy. He offered only his medical records, forwarded from prior institutions, which document his hemorrhoid condition. But without evidence that the standard of care requires reviewing all of a patient's voluminous medical records or that Dr. Tilden regularly did so, Feazell's medical records do not create a genuine issue of material fact as to Dr. Tilden's knowledge.

Feazell's sitz bath allegations cannot save his hemorrhoid claim, either. Feazell did not include them in his complaint and the district court did not abuse its discretion when it found he had waived them. *See Ollison v. Gossett*, 136 F.4th 729, 739–41 (7th Cir. 2025); *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023).

## C. Evidentiary Rulings at Trial

Lastly, Feazell challenges evidentiary rulings that barred him from testifying to his medical diagnoses and their effects.

Federal Rule of Evidence 701 prohibits lay witnesses from offering opinions based on "scientific, technical, or other specialized knowledge" governed by the expert witness rule.

Fed. R. Evid. 701(c); *see also United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (explaining that lay testimony may not be used to "provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events" (quoting *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001)).

In advance of trial, the court granted Dr. Tilden's Estate's motion to bar Feazell from testifying to his medical diagnoses or their effects. The court explained in detail that Feazell could testify to his perceptions, such as when he started and stopped bleeding. He was not qualified to testify about medical causation or diagnosis, though. So Feazell could not, for example, tell the jury why the bleeding started or what symptoms it caused. Despite this ruling, Feazell's counsel asked him on re-direct whether his mental health conditions "got worse" because of his anemia, and to explain the results of his colonoscopy. The magistrate judge sustained objections to both questions.

Whether Dr. Tilden's Estate opened the door to testimony on Feazell's hemorrhoid condition and the psychological effects of his anemia, as Feazell contends, is not material. The district court barred the medical causation and diagnosis testimony because Feazell was not competent to give it—not because it was irrelevant. In short, the court's ruling was not erroneous, much less an abuse of discretion.

\*   \*   \*

The judgment of the district court is

AFFIRMED.